[L. A. No. 16417.   In Bank.—March 15, 1938.]

WILLIAM HENRY IRONS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

William H. Irons, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—By this proceeding, a review is sought of the recommendation by the Board of Governors of The State Bar, of petitioner's suspension for a period of eighteen months from the practice of the law within this state.

By the terms of the notice that was given to petitioner to show cause why he "should not be disciplined for professional misconduct", in substance, the ultimate facts which purportedly constituted such asserted misconduct were set forth, together with the allegation that "All of said acts so committed by you during the course of your relations as an attorney and counsellor at law involve moral turpitude and dishonesty within the meaning of subdivision 5 of section 287 of the Code of Civil Procedure."

On the part of the prosecution, briefly, the record establishes the existence of the following facts: In satisfaction of a

judgment in an action in which petitioner had represented one Lampe, petitioner was paid the sum of $250, of which amount, in accordance with an agreement between him and his client, petitioner was entitled to retain for his own use the sum of $83.33. Instead of paying to his client the remainder of the amount thus collected, by means of false and misleading statements made by petitioner to his client, he "stalled" for a period of five months, at the expiration of which time he was informed by his client that he knew of petitioner's deception in the matter. Within a few days thereafter, petitioner paid to his client the amount to which he was entitled. In the meantime, the client had entered complaint of petitioner's misconduct to the proper officials who represented The State Bar of California, with the result that about a month after petitioner had paid his client, he was served with the said notice to show cause why he should not be disciplined. At the time when petitioner paid the money to Lampe, petitioner had no knowledge that Lampe had complained of petitioner's misconduct in the premises.

On the hearing of the notice to show cause, although petitioner admitted the truth of the foregoing statement, his defense thereto consisted of testimony given by him, which in part was corroborated by his law partner, to the effect that on the date when he received the said sum of $250, he deducted his fee therefrom and then placed the balance thereof in an envelope which he gave to his law partner, with the understanding then had between them that on the evening of that day he would deliver the envelope and the money to petitioner's client; that the next day at about 3:30 o'clock P. M., for the asserted reason that he had been unable to find his client, his partner returned the envelope to petitioner. Without any corroboration thereof, petitioner also testified that upon receipt of the envelope from his partner he had placed the envelope in a drawer in his roll-top desk, which he believed he thereupon locked; that petitioner had been engaged in court all of that day, but that on the day following, when he looked for the money that should have been in the envelope he discovered the fact that someone had taken it; that he registered no complaint with the police department regarding such theft; neither did he report to his client

the fact that the money had been stolen. To the contrary, for the reason, as testified by him, that:

"I was confident that he wouldn't believe it, that somebody had gone south with his money, and I think my opinions in that regard have been substantiated because other men more intelligent than Lampe believe that and don't believe it now. I was simply stalling for time for the purpose of getting the money, and at that time I had an opinion as to where the money had gone, and I am still of the same opinion."

Instead of telling his client that which petitioner now asserts was the truth regarding the disappearance of the money, the record indisputably shows that on several occasions, during a period of some months next ensuing, he represented to Lampe that due to the fact that the defendant had taken an appeal from the judgment the money had not been collected; that upon one of those occasions petitioner stated to Lampe that the "opposite side" had appealed and that "the other side" was entitled to thirty days in which to perfect such appeal, which period of time would be followed by a thirty or forty-day period to be accorded Lampe for his "answering" papers upon appeal, and thereafter "they" would be given sixty days for "their (defendant's) final appeal". About four months after petitioner had received the money from defendant's attorney (in carrying out the fiction of an appeal by defendant), in substance, petitioner stated to Lampe that the defendant had not prevailed upon his appeal from the judgment, but that additional time would be required during which certain formalities in regard to court procedure would have to be complied with; that petitioner would have to file certain papers in court after they had been "sent down on appeal", and that a few days thereafter Lampe would get his money. However, because of some asserted error in those "papers", represented by petitioner to Lampe to have occurred, and the consequent delay in their transmission from the appellate court, petitioner thus acquired a few more days' additional time in which to account for the money which theretofore had been received by him. Thereupon Lampe apparently became suspicious of the representations made by petitioner to him, and began an investigation relative to the asserted appeal. About two months thereafter, with the assistance

of another attorney, he examined the records of the court in which the action was brought and therefrom ascertained the fact that not only had no appeal ever been taken, but that the judgment had been satisfied several months previously. Thereafter, upon being advised by Lampe of the latter's knowledge of petitioner's deception, in effect, petitioner stated that he was sorry he had had to "string (Lampe) along", but that he was having some trouble with his law partner in the matter of the collection of fees belonging to petitioner, and that petitioner did not have the cash to pay Lampe then, but would have to "raise the money". He further stated that previously he had given the money due Lampe to his partner to deliver to Lampe, but that his partner thereafter stated to petitioner that he had used it for his own purposes, and that he would repay petitioner, and the latter could in turn "give it back to" Lampe. In that regard Lampe testified that petitioner stated he had made the statements to him regarding the defendant's purported appeal because petitioner "had to have some excuses to raise this money".

In substance, the local administrative committee before which the proceeding against petitioner was heard, found against the truth of the several statements that had been made by him and in his behalf, and thereupon made its recommendation to the Board of Governors of The State Bar, that because of the "professional misconduct" of petitioner as an attorney at law, he be suspended from the practice of law within this state for a period of eighteen months;—in which conclusion, on a review of the record of the proceedings therein, together with an additional affidavit which was made by the partner of petitioner in his behalf,—with the exception of one member thereof, the Board of Governors of The State Bar concurred, with the additional exception that two of the members of such board were of the opinion that instead of an eighteen months' suspension, petitioner should be disbarred.

Notwithstanding the fact that in effect petitioner admits the truth of each of the incriminatory facts to which reference hereinbefore has been had, petitioner seeks favorable action by this court in his behalf, upon the asserted grounds that the Board of Governors of The State Bar "acted arbitrarily and in excess of its jurisdiction in that it concurred in the findings, conclusions and recommendations of the Local Ad-

ministrative Committee and based its recommendations to this Court thereon and upon the minutes and record of the hearing before said Board of Governors on May 14th, 1937; that the findings, conclusions and recommendations of said Administrative Committee and the concurrence therein by and the recommendations of said Board of Governors, were not based upon evidence adduced before said Committee or before said Board of Governors''.

Particularly, petitioner asserts that there was an entire lack of evidence to support the conclusion that petitioner had converted to his own use the funds of the complaining witness. In that regard, his argument is to the effect that his own testimony, together with that of his partner, established the truth of the asserted fact that someone stole the money that belonged to his client. But on consideration of all the evidence, the weakness of petitioner's story and its improbability seem so apparent that to comment upon it would appear unnecessary. However, it may be pointed out that the testimony which was given by the partner of petitioner went only to a corroboration of the fact that in the first instance, after petitioner had received the money and had deducted his rightful fee therefrom, an attempt was made by petitioner to pay the balance thereof to his client, and that having been unsuccessful in that regard, the money was returned to petitioner. After that incident, the incriminatory facts are all against petitioner's contention. For example: petitioner's statement that he placed the money in his roll-top desk was not corroborated. He never informed the police department of the asserted fact that the money had been stolen; nor, with the exception of his partner, his brother, and his secretary, did he ever tell anyone that he had sustained such a loss. And in the latter connection, on the hearing which took place before the local administrative committee, he failed to present any corroborative evidence or testimony that (with the exception of his partner) he had ever informed either of the other persons that the money had been stolen. Although petitioner suspected some mysterious individual as the culprit, he declined to give his name. Even in order to clear his own good name in the premises, as far as his client was concerned, petitioner never at any time made any representation to him that the money had been stolen. From the beginning, petitioner deliberately

resorted to the most flagrant falsehoods and deception of the worst type to "stall off" his client's demands that he be paid the money to which he was entitled. Even assuming the truth of the story that was told by petitioner, it is significant that at no time during a period of five months which succeeded the receipt of the money did petitioner pay his client either the whole or any part of the money. It was only after petitioner had been informed by his client that he had obtained conclusive evidence of the deception, that petitioner had practiced, that petitioner paid his client the greater part of the money which theretofore should have been placed in his hands. Nor does the record contain any evidence that before petitioner had been confronted by his client and had been charged with "professional misconduct", did he make even the slightest effort to replace the money which he now asserts had been stolen from him. When petitioner did pay the money to his client, he had no knowledge that his client theretofore had lodged a complaint against him with the local administrative committee of The State Bar.

From the foregoing, it is clear that petitioner's contentions are wholly without merit. Other than petitioner's unsupported statement to the effect that his client's money had been stolen, with the exception of the testimony that was given by petitioner's partner, to which reference hereinbefore has been had, every other bit of evidence points almost beyond the possibility of doubt, to the conclusion that petitioner wilfully and wrongfully misappropriated money that was the property of his client.

In the circumstances, the recommendation of eighteen months' suspension of petitioner from the practice of the law within this state, which was made by the local administrative committee, and in which recommendation the Board of Governors of The State Bar concurred, was most lenient.

It is ordered, that petitioner be and he is denied any relief from the recommendation of which he complains; to the contrary, it is ordered that the said recommendation be and it is approved and adopted. It is further ordered that the license of William Henry Irons to practice law within this state, and in each and all of the courts thereof be, and it is, suspended for a period of eighteen months, effective thirty days after the filing of this order.