[Civ. No. 27206.   Second Dist., Div. Three.   Nov. 17, 1964.]

B. GENE MORRIS, Plaintiff and Appellant, v. THE BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

Landon Morris, Ball, Hunt & Hart, Joseph A. Ball and Joseph D. Mullender, Jr., for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Conrad Lee Klein, Deputy Attorney General, for Defendant and Respondent.

FORD, J.—This is an appeal from a judgment denying a petition for a writ of mandate by which the petitioner, Dr. Morris, sought to annul the decision and order of the respondent Board of Medical Examiners of the State of California imposing discipline on him.

On April 25, 1960, in the United States District Court the petitioner entered a plea of *nolo contendere* to each of two counts of an indictment charging violations of section 145(b) of the Internal Revenue Code of 1939. In one count it was alleged that the petitioner did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the year 1953. In the other count such offense was charged with respect to the year 1954. On May 16, 1960, the court imposed a fine of $10,000 upon petitioner as to the first count. With respect to the second count, imposition of sentence was suspended and the petitioner was placed on probation for a period of five years on certain conditions, one of them being that the petitioner pay the taxes and penalties which should subsequently be adjudicated to be due as to the years involved.

Thereafter a special investigator for the Board of Medical Examiners filed with the board an accusation against the petitioner. (Gov. Code, § 11503.) It was therein alleged that the petitioner had been convicted of the federal offenses con-

stituting felonies to which reference has been made herein-above and that, therefore, he was guilty of unprofessional conduct as defined in section 2383 of the Business and Professions Code.[1]

A hearing was had before a hearing officer. After offering in evidence certified copies of court records relating to the prosecution of Dr. Morris, the complainant rested. Thereupon evidence was offered on behalf of Dr. Morris as to his reputation in the community in which he resided and practiced for honesty and integrity, as to the circumstances under which he filed the income tax returns which understated his income, and as to the proceedings with respect to his entry of the plea of *nolo contendere.*

In his proposed decision the hearing officer found that for the year 1953 Dr. Morris made a return stating his net income to be in the sum of $11,238.49 and the tax due thereon to be in the sum of $2,289.16, whereas his net income for that year was in the sum of $33,356.60 and the tax due thereon was in the sum of $11,397. He further found that for the year 1954 Dr. Morris made a return stating his net income to be $18,053.91 and the tax due thereon to be $4,006.34, whereas his net income for that year was in the sum of $49,413.23 and the tax due thereon was in the sum of $18,891.70.

With respect to the evidence introduced on behalf of Dr. Morris, the hearing officer's proposed decision was as follows: "Respondent introduced evidence which proved the following facts: 1. Respondent owned a hospital at Indio, California, which he operated in connection with his private practice of medicine. Respondent entered into an arrangement with the

---

[1]Section 2383 of the Business and Professions Code, as amended in 1957, is as follows: "The conviction of either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude constitutes unprofessional conduct within the meaning of this chapter. The record of conviction shall be conclusive evidence only of the fact that the conviction occurred. The board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if such conviction is of an offense involving moral turpitude. A plea or verdict of guilty or a conviction following a plea of nolo contendere made to a charge of a felony or of any offense involving moral turpitude is deemed to be a conviction within the meaning of this section. The board may order the license suspended or revoked, or may decline to issue a license, when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code allowing such person to withdraw his plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information or indictment."

Continental Casualty Company to furnish medical and hospital services to the Mexican workmen at a flat rate per month per laborer and said casualty company did issue monthly checks to pay for said services. Respondent also had an arrangement with the County of Riverside whereby hospital and medical services would be rendered to people receiving Old Age Security. Respondent upon receiving the checks from the casualty company and the county would exchange said checks for cashier's checks and the amount of the income was not entered on respondent's books. 2. As either the hospital or respondent's own living expenses required additional money respondent would then cash the cashier's checks and turn the money over to the hospital or use the same for the living expenses of respondent and his wife, the purchase of furniture for their home, or jewelry for his wife, or, in one instance, respondent used some of said money to take a group of three people plus himself on a trip to Hawaii. 3. Respondent contended that the reason he caused the checks he received to be exchanged for cashier's checks was to prevent his competitors from knowing the amount of income he was receiving from either the casualty company or the County of Riverside and felt that if he had deposited the checks in the bank at Indio, California, information as to his income would leak out to his competitors. 4. Respondent had practiced medicine and surgery at Indio, California, for approximately 25 years and had built his total assets up to approximately $490,000 and at the time of his sentence by the District Court in May, 1960, he had liabilities of approximately $145,000, leaving a net worth of approximately $355,000 [sic]."

The hearing officer further found that Dr. Morris' "convictions involved moral turpitude." Based upon his findings of fact, the hearing officer determined that unprofessional conduct under the provisions of section 2383 of the Business and Professions Code had been established and that the facts proven by Dr. Morris were insufficient to mitigate the penalty in the matter. The order proposed was that Dr. Morris' license to practice medicine and surgery in the State of California be revoked.

The Board of Medical Examiners adopted the proposed decision of the hearing officer as its decision except with respect to the penalty proposed. The effectiveness of the order as to the matter of revocation was stayed for a period of five years, during which period Dr. Morris was placed on probation subject to specified conditions. One of such conditions was

that Dr. Morris should not exercise any of the rights and privileges granted to him by his license until the expiration of 180 days from the effective date of the board's decision.

In the proceedings in the superior court pursuant to Dr. Morris' petition for a writ of mandate, the court's findings of fact were in part as follows: 1. The decision of the Board of Medical Examiners was supported by its findings of fact and such findings were supported by the weight of the evidence, except that there was an inaccuracy in the findings in that, although it was true that the unreported income was not entered on the books of Dr. Morris which recorded income and from which his income tax returns were prepared, evidence of that income was reflected in other documents which were a part of Dr. Morris' business records. 2. Such inaccuracy in the board's findings of fact, as well as any inaccuracy in such findings as to the use made of the unreported income, did not result in prejudice to Dr. Morris. 3. The hearing officer and the board did not exceed their jurisdiction, did not abuse their discretion, granted Dr. Morris a fair hearing, and afforded him due process of law throughout all of the proceedings.

The first contention made by the petitioner is that under section 2383 of the Business and Professions Code (set forth in footnote 1 to this opinion), a conviction of a felony cannot constitute unprofessional conduct unless that offense involved moral turpitude. But that contention is tenable only if the amendment of section 2383 in 1957 changed the law existing prior thereto. Before that amendment the portion of section 2383 here pertinent was as follows: "The conviction of a felony, or of any offense involving moral turpitude, constitutes unprofessional conduct within the meaning of this chapter. The record of the conviction is conclusive evidence of such unprofessional conduct. A plea or verdict of guilty or a conviction following a plea of nolo contendere made to a charge of a felony or of any offense involving moral turpitude is deemed to be a conviction within the meaning of this section." In *Furnish* v. *Board of Medical Examiners,* 149 Cal.App.2d 326 (decided March 20, 1957), it was held (p. 330 [308 P.2d 924, 309 P.2d 493]) that by that section "the Legislature intended that the *conviction of a felony* in and of itself, without any qualifications, constitutes unprofessional conduct."

Prior to the decision in the *Furnish* case, in *Lorenz* v. *Board of Medical Examiners,* 46 Cal.2d 684 [298 P.2d 537],

the Supreme Court had occasion to construe the former language of section 2383 of the Business and Professions Code. The opinion was filed on June 19, 1956. In that case a physician had pleaded guilty to a violation of the Alcoholic Beverage Control Act which was a misdemeanor. Therein the court stated (46 Cal.2d, at pp. 686-687) : ''Under the plain language of section 2383 it is the conviction alone of an offense involving moral turpitude that empowers the board to suspend or cancel a license. Since the record of conviction is conclusive evidence of the unprofessional conduct, the circumstances in which the crime was in fact committed cannot be considered. Moral turpitude must be inherent in the crime itself to warrant cancellation or suspension of a license because of the conviction. (*In re Hallinan,* 43 Cal.2d 243, 248-249 [272 P.2d 768].) Moral turpitude is not inherent in the crime itself unless a conviction in every case would evidence bad moral character. (*Ibid.*) Only if the minimum elements for a conviction necessarily involve moral turpitude and a conviction cannot be had without proof of facts showing moral turpitude, can the conviction be held to be of an offense involving moral turpitude.''

The present language of section 2383 that the conviction of ''either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude constitutes unprofessional conduct within the meaning of this chapter'' reasonably supports only the conclusion that a felony conviction, in and of itself, constitutes unprofessional conduct. This is clear from the manner in which the reference to ''a felony'' is separated from the designation of ''any offense, misdemeanor or felony, involving moral turpitude.'' Furthermore, it is to be noted that in defining what constitutes a conviction, reference is made in section 2383 to ''a charge of a felony or of any offense involving moral turpitude.''

The amendment of 1957 shows a legislative intent to change the meaning of section 2383 as expressed in *Lorenz* v. *Board of Medical Examiners, supra,* 46 Cal.2d 684. Where the conviction is one which does not constitute unprofessional conduct unless it involves moral turpitude, no longer must moral turpitude be inherent in the crime itself; the board may inquire into the circumstances surrounding the commission of the crime in order to determine if such conviction was of an offense involving moral turpitude. (*Bernstein* v. *Board of Medical Examiners,* 204 Cal.App.2d 378, 381 [22 Cal.Rptr. 419].) The record of conviction is now conclusive evidence only of the fact that the conviction occurred. In any event,

moreover, the board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline to be imposed.

Thus, while the amendment of 1957 changed the meaning of section 2383 with respect to the problem presented in the *Lorenz* case, it did not alter the meaning of the section with respect to the question of whether conviction of a felony, regardless of the existence of moral turpitude, constitutes unprofessional conduct. ■ As stated in *Hammond* v. *McDonald*, 49 Cal.App.2d 671, at page 681 [122 P.2d 332] : "A substantial change in the language of a statute by an amendment indicates an intention to change its meaning. . . . But a mere change in phraseology, incident to a revision of Constitution or statute, does not result in a change of meaning unless the intent to make such a change clearly appears."

In view of the conclusion reached as to petitioner's first contention, it is not necessary to discuss his further contention that the board was without jurisdiction because the accusation did not allege that his conviction involved moral turpitude.

The petitioner attacks the determination of the board, which was sustained by the superior court, that Dr. Morris' conviction involved moral turpitude. His argument requires careful consideration, not because a finding of moral turpitude was necessary to warrant the imposition of discipline in this case, but rather because if there was any unsupported determination based on the circumstances surrounding the commission of the felonious offenses, the question is presented as to whether the petitioner thereby suffered prejudice with respect to the board's decision as to the degree of discipline to be imposed.

In resolving a contention as to the sufficiency of evidence, the respective functions of the trial court and of this court must be kept in mind. ■ As stated in *Sunseri* v. *Board of Medical Examiners,* 224 Cal.App.2d 309, at page 313 [36 Cal.Rptr. 553] : "Appellant's principal contention is that the findings of the respondent are not supported by the evidence and hence its order and decision are invalid. On appellant's application for the writ of mandamus the trial court was authorized to exercise its independent judgment on the evidence and decide the issue accordingly. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308-309 [196 P.2d 20].) On appeal, however, we must abide by the usual standard of appellate review. (*Tabory* v. *State Personnel Board,* 208 Cal. App.2d 543, 546 [25 Cal.Rptr. 333] ; *McMurtry* v. *State Board*

*of Medical Examiners, supra,* at p. 774 [180 Cal.App.2d 760 (4 Cal.Rptr. 910)].) Thus, our power begins and ends with a determination of whether there is any substantial evidence to support the order and decision of respondent. If there is such evidence, we must affirm; if not we may reverse.'' (See also *Magit* v. *Board of Medical Examiners,* 57 Cal.2d 74, 80 [17 Cal.Rptr. 488, 366 P.2d 816].)

As has been noted, the only evidence of the facts and circumstances surrounding the filing of tax returns understating taxable income was that offered on behalf of Dr. Morris, including his own testimony.[2] While the conviction of Dr. Morris for violation of section 145(b) of the Internal Revenue Code of 1939 did not, in and of itself, establish the existence of moral turpitude (*In re Hallinan,* 43 Cal.2d 243, 253 [272 P.2d 768]), the evidence offered on behalf of Dr. Morris could be considered in determining whether he intentionally and for the purpose of personal gain filed false income tax returns for the years 1953 and 1954. If he did so, such criminal acts of intentional dishonesty were acts involving moral turpitude (*In re Hallinan,* 48 Cal.2d 52, 54 [207 P.2d 1]), and the board was entitled to consider the fact of such moral turpitude in fixing the degree of discipline.

Dr. Morris' contention that there was no substantial evidence that his conviction involved moral turpitude is summarized at one point in his opening brief as follows (specific references to the transcript being omitted herein): ''The crucial portion of the evidence was the explanation of why there had been a failure to report income. . . . The hearing officer, in his proposed decision, made findings on some

---

[2]The purpose for which such evidence was offered is indicated by the following paragraph of the brief on behalf of Dr. Morris submitted to the hearing officer after the close of testimony: ''We have discussed the significance of the plea of *nolo contendere* as support for our claim that the plea itself is not to be construed as an admission of guilt. However the record of the plea is material to this hearing as the Board of Medical Examiners may in its discretion discipline any licensed physician following a plea of *nolo contendere* to a charge of felony. (Section 2382 [*sic*] Business and Professions Code.) The evidence presented by the respondent at the hearing was in support of the claim that the offense charged did not involve moral turpitude. This is not a complete defense but is urged in mitigation of a threatened penalty.''

The closing paragraph of the brief was as follows: ''We respectfully urge that the weight of evidence in this case supports the doctor's claim that he was innocent of a specific intent to evade the payment of income taxes; therefore, the acts surrounding the commission of the offense to which he entered a plea do not involve moral turpitude. In view of the doctor's excellent reputation in the community and his thirty years of faithful service in the performance of his professional duties, we respectfully pray for leniency in the imposition of any penalty.''

of the evidence, most of which were erroneous, and ignored the bulk of the evidence. The most serious errors were these. The evidence was uncontradicted that all of Dr. Morris' income was recorded in his business records. Yet the hearing officer found that the unreported income was not entered on the books. The trial court held that this finding was not supported by the evidence. It was also uncontradicted that Dr. Morris had employed a firm of certified public accountants to audit his books and to improve the bookkeeping system. The records had been theretofore maintained and the tax returns prepared by a bookkeeper who was probably incompetent. The certified public accountants, after a cursory examination, did not discover the unreported income, but found that a claim for refund of taxes for a prior year could be made, and advised Dr. Morris that the Internal Revenue Department would probably audit his records if he made the claim for refund. Dr. Morris told the certified public accountants that he did not fear an audit and to make the claim for refund. The Internal Revenue Department then did audit his records and found from an examination of those records that there had been unreported income. The hearing officer made no findings on these facts, but concluded that Dr. Morris' conviction involved moral turpitude and recommended that his license to practice medicine be revoked.''

The trial court found to be partially inaccurate the board's finding that the amount of the income converted into cashier's checks was not entered on Dr. Morris' books. That inaccuracy was expressed by the trial court as follows: ''. . . that although it is true that the unreported income was not entered on those of petitioner's books which recorded income and from which his income tax returns were prepared, evidence of said income was reflected in other documents which were a part of petitioner's business records.'' When viewed in the light of the record, the determination of the trial court that Dr. Morris suffered no prejudice because of such error in the findings of the board is sound. The income unreported by Dr. Morris for the years 1953 to 1956, inclusive, was in the total amount of $137,906.76. A certified public accountant, who was first consulted by Dr. Morris in the spring of 1956, testified that he did not know of Dr. Morris' practice of purchasing cashier's checks until after the Internal Revenue Service had undertaken its audit of Dr. Morris' books and records. That accountant prepared Dr. Morris' return for the year 1956. In answer to a question as to the source of the amount of total

income obtained by him, he testified that he took it from an income account in the books. That account was in the general ledger and did not reveal the source of the income. He did not learn that the taxable income for that year was approximately $61,000, instead of approximately $24,000 as reported, until he was shown the report of the agent of the Internal Revenue Service. Another certified public accountant, who was engaged by an attorney representing Dr. Morris after the federal audit had begun, testified that income that was not deposited in Dr. Morris' business bank account was not entered in the "ultimate income account" which was the income account for tax purposes kept by Dr. Morris' bookkeeper.

The contention that the findings were not "fair findings on all of the evidence" as to the circumstances relating to the filing of the income tax returns does not furnish a substantial basis for a reversal of the judgment. ■ There was no requirement that the hearing officer prepare a summary of all of the evidence.[3] It was the duty of the hearing officer to weigh and appraise the evidence. (*Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 401 [184 P.2d 323].) In the performance of that duty, he was free to reject the inference that the inaccuracy in the income tax returns was caused by the incompetency of the bookkeeper and to accept the inference that Dr. Morris intentionally and for the purpose of personal gain filed false income tax returns for the years 1953 and 1954 and had thereby been guilty of moral turpitude. That the hearing officer drew that inference is clear from his proposed decision. The board adopted that decision except as to the matter of penalty. In the exercise of its independent judgment on the evidence, the trial court sustained the order and decision of the board. Since a review of the record shows that there was substantial evidence in support of such deter-

---

[3]Subsection (b) of section 11517 of the Government Code is as follows: "If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record and a copy of the proposed decision shall be served by the agency on each party in the case and his attorney. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision." Section 11518 of the Government Code is as follows: "The decision shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The findings may be stated in the language of the pleadings or by reference thereto. Copies of the decision shall be delivered to the parties personally or sent to them by registered mail."

mination, this court cannot interfere therewith. (*Sunseri* v. *Board of Medical Examiners, supra,* 224 Cal.App.2d 309, 313.)

In a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed in the absence of an abuse of discretion. (*Magit* v. *Board of Medical Examiners, supra,* 57 Cal.2d 74, 87.) There was no abuse of discretion in the present case. (Cf. *Furnish* v. *Board of Medical Examiners,* 149 Cal.App.2d 326, 332 [308 P.2d 924, 309 P.2d 493].)

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.