[L.A. No. 30189. In Bank. May 1, 1974.]

In re MICHAEL ARTHUR COHEN on Suspension.

**COUNSEL**

Michael Arthur Cohen, in pro. per., for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal and Christopher M. Reuss for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law in this state for a period of three years on conditions of probation, including actual suspension for the first two years. Petitioner was admitted to practice law in California in 1969, and he has no prior record of discipline.

On March 20, 1972, petitioner pleaded guilty to, and was convicted of, possession of marijuana for sale, in violation of former section 11530.5 (now § 11359) of the Health and Safety Code. He was placed on probation for three years on specified conditions, including 120 days in custody

of the sheriff. After 63 days in custody, he was released on probation, which continues and will expire in April 1975.

In July 1972, this court referred the matter to the State Bar for hearing and recommendation on the question whether the "facts and circumstances surrounding" petitioner's "commission" of the crime of which he stands convicted involved moral turpitude, and, if so, the nature and extent of discipline to be imposed.

The disciplinary board unanimously determined that moral turpitude was involved and by a vote of eight to five recommended that petitioner be suspended from practice for three years on conditions of probation, including actual suspension for two years.[1] Previously, the local administrative committee, which conducted the evidentiary hearings, had unanimously determined that the facts and circumstances of petitioner's commission of the offense involved moral turpitude, but the two-member committee was divided on the degree of discipline to recommend, one favoring a recommendation of disbarment and the other the discipline now recommended by the disciplinary board.

In his objections to the report and recommendation of the disciplinary board, petitioner urges, alternatively, that no moral turpitude was involved and the matter should be dismissed, or that lesser discipline should be imposed if moral turpitude was involved.

The record shows that on March 25, 1971, James M. Hartshorne was arrested at the San Diego International Airport with 26 pounds of bulk marijuana in his possession. Charles J. McLaughlin, an agent of the State Bureau of Narcotics Enforcement, after questioning Hartshorne with respect to where he had purchased the marijuana and from whom, asked him if he would be willing to cooperate in arranging further purchases from the same person or persons. Hartshorne agreed to cooperate and said that he had purchased the marijuana from a person known to him as "Roger" (later identified as Roger Pytlewski) at his residence at 7841½ Fay Avenue in La Jolla. Hartshorne said that he had made four previous purchases of marijuana from Pytlewski. At McLaughlin's request, Hartshorne attempted to arrange a further purchase of approximately 50 kilos of marijuana from Pytlewski. Pytlewski's residence was kept under constant surveillance by law enforcement officers from March 31, 1971, to April 3, 1971. During this period, a number of persons were seen in or about the premises, including petitioner.

---

[1] Of the five board members voting "No," four did so on the ground that the recommended discipline was insufficient and the other on the ground that it was excessive.

About 6:30 p.m. on April 3, 1971, Pytlewski instructed Hartshorne to be at the Fay Avenue address at 7:15, at which time he could obtain possession of the marijuana. Five minutes later, Pytlewski and petitioner left the house at 7841½ Fay Avenue and drove away in the direction of Pacific Beach in Pytlewski's Mercedes automobile. They went to the home of Arthur Harris and there loaded cartons containing 42 bricks or kilos of marijuana into the trunk of Pytlewski's automobile. Around 7:10 p.m., Pytlewski and petitioner returned and parked in the parking lot adjacent to 7841½ Fay Avenue. Several minutes later, they got out of the car, removed the boxes containing marijuana from the trunk of the car, and carried them into the house by the side door.

About 7:25 p.m., Hartshorne and Deputy Sheriff Roger Williamson (the latter acting in an undercover capacity) arrived at the Fay Avenue address and were admitted into the house by Drene Singer. Petitioner was sitting on a couch in the living room. Pytlewski then took Hartshorne and Williamson to a back room. The room had the odor of bulk marijuana, and there were a large number of bricks of bulk marijuana in three cardboard boxes. One of the packages was torn open, and Williamson saw that the contents were bulk marijuana. A young girl approximately 10 years old was lying on a bed in the room.[2] Pytlewski said that the marijuana was the same quality as he had sold to Hartshorne on two previous occasions; and he explained that he could sell Williamson only 42 bricks, because he had promised 9 to another person. The price agreed upon for the marijuana was $155 per kilo. Williamson had with him approximately $7,200 in state funds, which he had obtained from McLaughlin.

Hartshorne and Williamson left, supposedly to obtain the purchase money and some suitcases in which to transport the marijuana. A pre-arranged signal was given to waiting law enforcement officers, and the premises were immediately re-entered. Thereupon, Pytlewski, Drene Singer, petitioner, and four other adults were arrested; and, pursuant to a search warrant, the officers made a thorough search of the house. In addition to various smaller quantities of marijuana, paraphernalia for using marijuana, and a variety of pills containing restricted dangerous drugs, the 42 bricks of marijuana in the back room were seized. They were found to contain 34,028 grams of marijuana, enough for approximately 68,056 cigarettes. Also found were (1) a business card bearing petitioner's name as an attorney and an office address of 137 North Orange Avenue, El Cajon, California, (2) petitioner's wallet, and (3) an envelope addressed

---

[2]The record shows that Drene Singer's two minor daughters, one 10 years old and the other 8, were living with their mother and Pytlewski at the Fay Avenue address.

to petitioner at 7841½ Fay Avenue by the Court of Appeal, Fourth Appellate District, containing a conformed copy of an order (prepared by petitioner and showing the Fay Avenue address as his office address) granting petitioner an extension of time to file the opening brief in an appeal in which petitioner was representing a client who had been convicted of the possession of dangerous drugs.

Upon being identified as an attorney, petitioner was questioned by the officers. He said that he would direct them to the residence in Pacific Beach where he and Pytlewski had picked up the 42 bricks of marijuana earlier that evening. He directed the officers to 4012 Sequoia Street at Pacific Beach and said that the person there from whom the marijuana had been obtained was known to him as "Art" (subsequently identified as Arthur Harris). Petitioner provided a description of such person by age, weight, and height and said that he had known him for some time but had not seen him for about six months. Petitioner stated that he and Pytlewski had parked at the rear of the driveway when they were there earlier that evening and that he had helped Pytlewski load the cartons containing marijuana into the trunk of Pytlewski's automobile. A search warrant authorizing a search of the premises at 4012 Sequoia led to the seizure, from various locations there, of approximately 60 grams of marijuana, cigarette papers, scales, masking tape, pipes containing marijuana debris, 5 pounds of marijuana in a red tin can on a shelf in the kitchen, a paper bindle and some capsules containing about 1 gram of cocaine, and some amphetamines.

According to petitioner's testimony, he never resided at the Fay Avenue address. He said that his professional card found there at the time of his arrest was most likely one he had given Drene Singer when he was representing her in a matter three months prior to his arrest. He also said that the only time he had used the Fay Avenue address as his law office address was in connection with the case in which the order granting him an extension of time to file an opening brief had been made. He had used the address then, because he was closing out his legal practice in El Cajon and moving his residence, intending to leave for Northern California; and he wanted to make sure before he left that the court had granted him a continuance.

Pytlewski, in an interview with the probation officer, stated in substance that he was the principal actor and not petitioner; that he had run out of money and decided to sell marijuana; that on April 3, 1971, petitioner knew where they were going and why; that petitioner had gone with him on one other occasion, but there was no arrangement for petitioner to re-

ceive any money; and that he (Pytlewski) had the impression that petitioner was involved only for the adventure. Pytlewski characterized petitioner as "naive rather than sophisticated."

From the record, it is clear that petitioner knowingly assisted Pytlewski in transporting marijuana on April 3, 1971, and on the previous occasion mentioned by Pytlewski; that he knew that Pytlewski and Drene Singer were trafficking in marijuana; and that he received no pecuniary consideration. Although petitioner testified that as a friend he had urged Pytlewski to give up the activity, he also said, among other things: "I rode in the car with Roger Pytlewski that night, and that was out of an act of pure friendship as if I would be going to the supermarket with someone— someone who was going to go do an errand, and I went along with him and carried the marijuana as if I were going to unload groceries from a car and put it in the house."

Petitioner further stated: "It was an adventure; it was a learning experience for me. I knew I was in violation of the law, but I did not question the morality of my acts." When questioned with respect to the meaning of his phrase "an adventure," petitioner testified: "A. Well, it is a rationalization to prevent me from either reporting them to the authorities or disassociating myself from them. Q. Which apparently you had some inclination to do, or some realization that you might have an obligation to do? A. I definitely did."

As in *In re Higbie,* 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97], another conviction reference matter, we determined that petitioner's offense did not involve moral turpitude as a matter of law, but warranted State Bar inquiry into whether the facts and circumstances surrounding commission of the offense involved moral turpitude; and such inquiry resulted in a finding that the conviction was one involving moral turpitude. Petitioner was unquestionably aware of the laws proscribing possession and sale of marijuana, which laws provide for severe penalties for those convicted of their violation. (See Health & Saf. Code, §§ 11358-11361.) Petitioner acknowledged that he knew he was in violation of the law, and the record shows that he was at the time representing a criminal defendant who was charged with possession of marijuana and restricted dangerous drugs and later convicted on the latter charge. Under the circumstances, the finding that moral turpitude was involved is amply warranted.

All of petitioner's acts were admittedly done voluntarily. Neither Pytlewski nor Singer urged him to participate. His only excuse is that he acted out of friendship and a spirit of adventure. As hereinabove pointed out, how-

ever, petitioner admitted that his interest in an adventure was merely a rationalization to prevent him from "either reporting his friends to the authorities or disassociating himself from them."

The oath of office taken by petitioner when he was admitted to practice included an oath to support the laws of the state and to maintain the respect due to the courts of justice. (Bus. & Prof. Code, § 6068, subds. (a), (b).) The facts hereinabove recited clearly show that petitioner has failed to abide by this oath.

■ In determining the degree of discipline to be imposed upon petitioner, this court may take into consideration a number of factors favorable to him. For instance, petitioner had no prior record of discipline, his wrongful acts did not grow out of a motive for personal enrichment, and he displayed honesty and cooperation when he was arrested.

One of petitioner's law school friends testified that he did not believe petitioner would have acted in such a way for pecuniary gain, but that petitioner had been immature and should have used better judgment in selecting persons with whom to associate himself and should have stopped associating with Pytlewski. He also said that he believed petitioner was capable of performing good legal work.

Another of petitioner's friends from law school testified that he felt that petitioner could be trusted in any kind of business transaction and that although petitioner's actions showed a lack of judgment on his part, he did not believe petitioner would have been involved in the transaction to deceive anyone or obtain gain for himself.

Petitioner has not practiced law since the date of his arrest (April 3, 1971). He is presently employed as Assistant Director of the Ojai Youth Agency, a federally funded project in Ojai, California, working with "predelinquent" adolescents. He is committed to the project through March 31, 1974. Character references on behalf of petitioner have been provided by persons connected with the project, as well as by various friends.

Although these mitigating circumstances do not serve to excuse petitioner from the consequences of his conduct involving moral turpitude, it is this court's opinion that under all the circumstances the discipline hereinafter ordered is adequate.

It is ordered that petitioner be suspended from the practice of law for three years, commencing March 20, 1972, the first two years of which

shall be actual suspension. Following actual suspension, he shall be placed on probation for the last year of the three-year term, during which period he may engage in the practice of law.

Wright, C. J., and Sullivan, J., concurred in the order.