[Civ. No. 45393. Second Dist., Div. Three. Aug. 26, 1975.]

BOARD OF TRUSTEES OF THE SANTA MARIA JOINT UNION HIGH SCHOOL DISTRICT, Plaintiff and Appellant, v. THEODOR JUDGE, Defendant and Respondent.

**COUNSEL**

George P. Kading, County Counsel, and Don H. Vickers, Deputy County Counsel, for Plaintiff and Appellant.

Paul D. Powers and Hathaway, Clabaugh, Perrett & Webster for Defendant and Respondent.

**OPINION**

**COLE, (J.L.), J.\***—In this matter we affirm the action of the superior court refusing to allow a school district to discharge a teacher convicted of cultivating a single marijuana plant. Respondent Theodor Judge was a tenured and certificated teacher employed by appellant Board of Trustees of the Santa Maria Joint Union High School District (the Board). In 1972 he was arrested and charged with the cultivation of marijuana in violation of then section 11530.1 (now § 11358) of the Health and Safety Code.[1] Following his arrest the Board chose to place respondent on compulsory leave of absence pursuant to Education Code section 13409. After his conviction the Board sought to discipline him on three grounds: conviction of a felony, conviction of a crime involving moral turpitude and evident unfitness for service.

Following the then existing statutory procedures (*i.e.,* former Ed. Code, § 13412) the Board, after respondent's request for a hearing, filed a complaint asking the superior court to inquire into the charges. In his answer, respondent admitted his conviction, but denied that it constituted grounds for discipline. After hearing, the trial court found that "the conviction of said felony and the activity which formed a basis for such

---

\*Assigned by the Chairman of the Judicial Council.

[1]Respondent found the marijuana plant in a pot, in an open field, while on a walk. He took the plant home and placed it in his backyard, on top of a rabbit hutch. He had it a week or 10 days before he was arrested. He took it home out of curiosity. He thought that it was marijuana, but he was not sure.

conviction does not constitute a crime of moral turpitude" and also found that the evidence was "insufficient to establish that the defendant is, by reason of his conduct, his conviction, and the knowledge of the community, unfit to teach in the schools of the [appellant district]." Judgment was entered stating that respondent may not be dismissed.

The applicable statute is Education Code section 13403. It states that "No permanent employee shall be dismissed except for one or more of the following causes: . . . (e) Evident unfitness for service. . . . (h) conviction of a felony or of any crime involving moral turpitude. . . ."

We hold that the commission of the offense here involved did not constitute moral turpitude, per se, and that a felony conviction, standing by itself, is not a ground for discipline in the absence of moral turpitude. We also hold that the findings that neither moral turpitude nor unfitness for service were established are supported by the evidence.

I.

*The Offense of Cultivation of
Marijuana Does Not Involve
Moral Turpitude As a Matter of
Law, Although It May Do So As
a Question of Fact*

The Board urges that, as a matter of law, respondent's conviction under Health and Safety Code section 11530.1 involves moral turpitude. We disagree. As the Board recognizes, marijuana related offenses need not necessarily always be crimes of moral turpitude. ". . . Possession or use of marijuana is, of course, unlawful [Citation omitted] . . . but measured by the morals of the day [Citation omitted] its possession or use does not constitute 'an act of baseness, vileness or depravity . . . contrary to the accepted and customary rule of right and duty between man and man' (*In re Craig* [1938] 12 Cal.2d [93] at p. 97.), or indicate that an attorney is unable to meet the professional and fiduciary duties of his practice." (*In re Higbie* (1972) 6 Cal.3d 562, 572 [99 Cal.Rptr. 865, 493 P.2d 97].) In *Higbie* the court determined that an involvement in a marijuana smuggling operation did not involve moral turpitude per se, although on the facts the court found that moral turpitude was involved.

Similarly, in *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477] the court determined that the possession of marijuana for sale,

by an attorney, did not constitute moral turpitude as a matter of law but that a finding that under the facts of the matter moral turpitude was involved was amply warranted. (11 Cal.3d at p. 421.)

We have the benefit of the trial court's reasoning, in a thoughtful memorandum decision. We may properly consider the memorandum as a guide to the reasoning of the court below. (6 Witkin, Cal. Procedure (2d ed.) pp. 4220-4222.) The court stated that the Board did not make the slightest attempt to prove that the offense involved moral turpitude. The court noted that no student was involved in the offense, and that the offense did not occur in public or on school premises. It regarded the growing of one plant of marijuana as being of an obviously different category than cases involving sexual misconduct with a student, homosexuality, fraud, dishonesty and similar conduct.

So do we. The offense involved here is, in our view, much less serious than the conduct involved in *Cohen, supra.* The offense of cultivating marijuana may be committed in a wide variety of factual settings. The actions of a curious school teacher who chances upon and brings home a single plant in a pot cannot be equated with those of a person who assiduously cultivates a whole field of marijuana plants in order to sell the crop or of one who intends to sell marijuana in his possession.

The Board argues that the Legislature has singled out marijuana crimes as among those for which a school board is authorized to suspend an employee, charged but not yet convicted. (Ed. Code, § 13409.) This does not indicate that the offense of cultivation is one of moral turpitude. The section includes the offense, with others, as among those within its scope. But it provides only that a teacher so charged "may" be placed on compulsory leave; at best, it is an inconclusive indicator of legislative intent.

Of more moment is section 12911 of the Education Code. That section clearly indicates that a violation of Health and Safety Code section 11530.1 (now § 11358) is not per se an act of moral turpitude. Section 12911 of the Education Code provides that the record of a conviction of a narcotics offense defined in section 12912.5 of that code shall be "sufficient proof of conviction of a crime involving moral turpitude for the purposes of [specified sections of the Ed. Code including § 13403] relating to the dismissal of permanent employees." Section 12912.5

defines various offenses as "narcotics offenses."[2] Yet, section 12912.5 does not define nor mention Health and Safety Code section 11358 or its predecessor section 11530.1, the offense herein involved. This is a clear indication that the Legislature did not intend cultivation of marijuana to be classed as one which involves moral turpitude as a matter of law.

Accordingly, we hold that whether respondent's conviction involves moral turpitude is a question of fact, not law.

II.

*Teachers Cannot Be Dismissed for Conviction of a Felony Under Section 13403 Unless the Felony Involves Moral Turpitude*

■ As noted above, subdivision (h) of section 13403 of the Education Code states that "Conviction of a felony or of any crime involving moral turpitude" is cause for dismissal. The Board argues that this language means that conviction of a felony in and of itself constitutes a ground for dismissal of a permanent certificated school employee. The Board argues that the term "felony" is not a vague word and that there is no constitutional reason why it alone cannot be a ground for dismissal. (*Hirsch* v. *City and County of San Francisco* (1956) 143 Cal.App.2d 313, 325 [300 P.2d 177]; *Purifoy* v. *State Board of Education* (1973) 30 Cal.App.3d 187 [106 Cal.Rptr. 201].) Specifically, the argument is that the words of subdivision (h) "involving moral turpitude" modify only the immediately preceding words "any crime" and not the earlier antecedent "a felony." Cited in support of this rule is *Elbert, Ltd.* v. *Gross* (1953) 41 Cal.2d 322, 326-327 [260 P.2d 35], applying the rule that "a limiting clause is to be confined to the last antecedent, unless the context or the evident meaning of the statute require a different construction." (See, also, *County of Los Angeles* v. *Graves* (1930) 210 Cal. 21, 26 [290 P. 444]; *Hopkins* v. *Anderson* (1933) 218 Cal. 62, 65 [21 P.2d 560]; *Anderson* v.

---

[2] " 'Narcotics offense' as used in Sections 13175, 13207, 13220.16, 13218, 13255, and 13586 means any one or more of the following offenses:

"(a) Any offense in Sections 11350 to 11355, inclusive, 11366, 11368, and 11550 of the Health and Safety Code.

"(b) Any offense committed or attempted in any other state or against the laws of the United States which, if committed or attempted in this state, would have been punished as one or more of the above-mentioned offenses.

"(c) Any offense committed under former Sections 11500 to 11503, inclusive, 11557, 11715, and 11721 of the Health and Safety Code.

"(d) Any attempt to commit any of the above-mentioned offenses."

*State Farm Mut. Aut. Ins. Co.* (1969) 270 Cal.App.2d 346, 349 [75 Cal.Rptr. 739].)

A contrary rule of construction is that when a clause follows several words in a statute and is applicable as much to the first word as to the others in the list, the clause should be applied to all of the words which preceded it. (*Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 659 [82 P.2d 3, 118 A.L.R. 486].)

We believe that here the context and evident meaning do require a different construction and we hold that subdivision (h) of section 13403 applies only to conviction of felonies involving moral turpitude.

First, in connection with its argument, rejected by us above, that the offense here involves moral turpitude the Board argues at length that the high standards expected of a school teacher bring the conviction within the moral turpitude classification. In this connection the Board rightly points out that in discipline cases a prime consideration is the relationship of the acts in question to the employee's job. (*E.g., Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]; *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 191-192 [107 Cal.Rptr. 852] [holding that a conviction for possession of marijuana did not so relate to appellant's duties as a tax representative trainee as to justify, per se, the discharge of the employee].) We think this concept is of importance in our present discussion of the construction of subdivision (h). The facts of each case will vary just as will the nature of the felony. As conceded by the Board some felonies involve conduct of a much less serious moral character than others. As pointed out by the Supreme Court in *Otsuka* v. *Hite* (1966) 64 Cal.2d 596, 605 [51 Cal.Rptr. 284, 414 P.2d 412], a conspiracy to commit a misdemeanor is a felony. Would discharge from teaching duties automatically follow a conspiracy to operate a motor vehicle without a muffler? The Board replies that in the rare case where a teacher is convicted of a minor offense, the teacher's dismissal would not be required by section 13403 because the section is permissive, not mandatory, and school boards have discretion to determine whether or not to dismiss a teacher when grounds exist. To state such a proposition is to undercut the basic argument. In effect the Board would then read the statute "conviction of a felony unless the Board determines the conviction is not serious enough or of any crime involving moral turpitude."

Second, Education Code provisions dealing with teacher dismissals indicate that certain felonies not involving moral turpitude are to be treated differently from others. Section 12912.5 mentioned above, defines as "narcotics offenses" certain specified felonies and misdemeanors. Section 13207 (with respect to credentials) and section 13218 (with respect to county issued certificates) provide that when a teacher is convicted of a narcotics offense defined in section 12912.5, the credential or certificate shall be forthwith revoked. The latter section does not mention the felony involved here. Thus, in the context of teaching, the Legislature has distinguished the consequences which follow a felony conviction under some statutes from those which follow under others. No "talismanic significance" arises from a criminal conviction in determining whether discipline is authorized or reasonable. (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 219.)

Third, there are a variety of statutes, dealing with various trades and professions which use many variants of language to establish criminal convictions as grounds for discipline.[3] When the Legislature wants to make it explicitly clear that conviction of a felony is a ground for discipline it knows how to do so. For example, Business and Professions Code section 3930, subdivision (c), dealing with nursing home administrators states that a license may be denied, suspended or revoked upon the "conviction of any crime involving moral turpitude . . . whether the act is a felony or a misdemeanor. . . ." And, with respect to doctors, the present version of Business and Professions Code section 2383 ("version 3") reads: ". . . conviction of either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude, constitutes unprofessional conduct. . . ."[4]

---

[3] E.g., the following sections of the Business and Professions Code: 1320, subdivision (k)—clinical laboratory technicians; 1679—dentists; 2383—doctors; 2533.1—speech pathologists; 2555.1—registered dispensing opticians; 2660, subdivision (d)—physical therapists; 2761, subdivision (f)—registered nurses; 2878, subdivision (f)—licensed vocational nurses; 2960, subdivision (a)—psychologists; 3094—optometrists; 3401, subdivision (b)—hearing aid dispensers; 3930, subdivision (c)—nursing home administrators; 4354—pharmacists; 4521, subdivision (f)—psychiatric technicians; 4882, subdivision (b)—veterinarians; 5100, subdivision (a)—accountants; 5577—architects; 5675—landscape architects; 6576—barbers; 6775, subdivision (a)—professional engineers; 7123—contractors; 7431, subdivision (j)—cosmetologists; 7551, subdivision (d)—private detectives; 7691—funeral directors; 7860, subdivision (a) registered geologists and geophysicists; 8025, subdivision (a)—shorthand reporters; 8649—structural pest control operators; 8780—land and photogrammetric surveyors; 9028, subdivision (a)—registered social workers and licensed clinical social workers; 9540.3, subdivision (d)—cleaning, dyeing and pressing licensees.

[4] An earlier version of Business and Professions Code section 2383 ("version 2") read: "the conviction of a felony, or of any offense involving moral turpitude, constitutes

**928**

We recognize that judicial interpretation of some of the statutes is not entirely consistent. Compare *In re Hatch* (1937) 10 Cal.2d 147 [73 P.2d 885]—under Business and Professions Code section 6101, providing that causes for disciplinary action arise from "conviction of a felony or misdemeanor, involving moral turpitude" the offense or crime, whether a felony or misdemeanor must be one involving moral turpitude—and *Jennings* v. *Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776]—Business and Professions Code section 10177, subdivision (b) authorizes revocation of a real estate salesman's license when the licensee has been convicted of "a felony or a crime involving moral turpitude"; the court recognized that the offense was a felony but went on to state that it clearly involved moral turpitude, thus assuming that although a felony had occurred it had to involve moral turpitude before discipline could be imposed—with *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397 [6 Cal.Rptr. 191]—interpreting Business and Professions Code section 10177, subdivision (b) to apply to any felony and with *Furnish* v. *Board of Medical Examiners, supra,* 149 Cal.App.2d 326, and *Morris* v. *Board of Medical Examiners, supra,* 230 Cal.App.2d 704.

Approached solely from the standpoint of the language involved, an argument can thus be made that Education Code section 13403, subdivision (h) applies to any felony whether or not it involved moral turpitude. But, considering all of the factors involved and the reasons expressed above, it is evident to us that that was not the legislative intent. Therefore, we hold that conviction of a felony, standing by itself, is not enough to warrant discipline under Education Code section 13403, subdivision (h).

unprofessional conduct . . ." With respect to version 2, the court held in *Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326 [308 P.2d 924, 309 P.2d 493] that conviction of a felony, in and of itself, was unprofessional conduct. In *Morris* v. *Board of Medical Examiners* (1964) 230 Cal.App.2d 704 [41 Cal.Rptr. 351, 12 A.L.R.3d 1201], this court held that version 3 did not alter the meaning of the section, as interpreted in *Furnish. Morris* did not discuss a still earlier version of section 2383 (version 1) which read: "The conviction of a felony or of any offense involving moral turpitude constitutes unprofessional conduct. . ." Version 1 is the same as version 2, except for the commas which appear in the latter, a fact noted in *Furnish.* (149 Cal.App.2d at p. 329.) Education Code section 13403, subdivision (h), with which we are here concerned, is identical to version 1 of Business and Professions Code section 2383, except that where the latter uses the word "offense" the Education Code section uses the word "crime." While it may not be totally decisive we do believe that the absence of commas in Education Code section 13403, subdivision (h) is of some significance. Commas are used to separate items in a list. (Random House, Dict. of the English Usage, Unabridged Ed. (1966) p. 295.) Their presence or absence in a statute is a factor to be considered in its interpretation *(Wholesale T. Dealers* v. *National etc. Co., supra,* 11 Cal.2d at p. 659).

## III.

*The Court Having Found the
Evidence Insufficient to
Establish That Respondent
Is Unfit to Teach, He May
Not Be Dismissed on Grounds
of "Moral Turpitude" or
"Evident Unfitness for Service"*

■ We need not dwell on the judgment insofar as it found for respondent with respect to the "evident unfitness for service" and "moral turpitude" grounds.[5] A teacher cannot be dismissed from service on those grounds, unless his actions indicate his unfitness to teach. (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 220.) There must be a nexus between the teacher's conduct and his usefulness to the school district. (*Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 826 [94 Cal.Rptr. 318].) Only when so construed can these grounds be constitutionally applied. (*Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 103 [100 Cal.Rptr. 73, 47 A.L.R.3d 742].)

The trial court found the evidence to be insufficient to establish any such unfitness on the part of respondent. The court also specifically found that moral turpitude was not involved. If supported by the evidence, these findings are binding upon us. (*Comings, supra,* 23 Cal.App.3d 94, 106.)

The Board presented school authorities as witnesses at the trial. They testified that there would be an adverse reaction if respondent were to continue to teach. Based on this testimony the Board urges that all it had to prove was that respondent was convicted of a crime, and that there was a reasonable relationship between the crime and the high duties imposed on a public school teacher. That argument is but another way of saying that the conviction here involved amounted to moral turpitude as a matter of law. We have already said that we disagree with that proposition.

---

[5]The statute also lists "immoral" or "unprofessional" conduct as a ground for dismissal. This ground and "moral turpitude" substantially overlap one another. They cover much the same conduct as "evident unfitness for service." (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 220, fn. 9.)

The trial court, in its memorandum of decision, referred not only to the Board's evidence but to other evidence concerning the effect of respondent's return upon the school. That evidence, contrary to the testimony relied upon by the Board, favored respondent's position. The court pointed out that witnesses testified to respondent's good qualities as a teacher; to the fact that his return to teaching would not have an adverse effect upon the school; that depriving him of his position would be an excessive reaction; that there is little likelihood of recurrence of the conduct; that there is no inherent danger to the students or to the school; and that the community would accept a legal system that contemplates rehabilitation of a person convicted of a crime.

Clearly, there was a conflict which the court resolved in respondent's favor.

In so doing the court considered all of the factors suggested in *Morrison v. State Board of Education, supra,* 1 Cal.3d at page 229,[6] and weighed the evidence against them. Having done so it found the evidence insufficient to establish that defendant was unfit to teach. We see no reason to depart from that result. Since the matter is one of fact in this instance, we are in any event bound by it. The same reasoning supports the factual determination that respondent's conviction of a felony did not by itself constitute moral turpitude.

The judgment is affirmed.

Cobey, Acting P. J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme court was denied October 23, 1975.

---

[6]". . . In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct,[24] the type of teaching certificate held by the party involved,[25] the extenuating or aggravating circumstances, if any, surrounding the conduct,[26] the praiseworthiness or blameworthiness of the motives resulting in the conduct,[27] the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers.[28]" (Fns. omitted.)