[Civ. No. 19956.    First Dist., Div. Two.    May 22, 1962.]

SPACE PROPERTIES, INC., Plaintiff and Respondent, **v.** TOOL RESEARCH COMPANY, Defendant and Appellant.

[Civ. No. 19957.    First Dist., Div. Two.    May 22, 1962.]

MARSHALL ELECTRIC COMPANY, Plaintiff and Respondent, v. SPACE PROPERTIES, INC., Defendant, Cross-defendant and Respondent; TOOL RESEARCH AND ENGINEERING CORPORATION, Defendant, Cross-complainant and Appellant.

(Consolidated Cases.)

Sidney Dorfman and Bernard Grossman for Defendant and Appellant in No. 19956 and Defendant, Cross-complainant and Appellant in No. 19957.

Crist, Peters, Donegan & Brenner, John M. Donegan and Sam R. Morley for Plaintiff and Respondent in No. 19956 and Defendant, Cross-defendant and Respondent in No. 19957.

Wilhelm, Blatt, Arden & Graham and William J. Graham for Plaintiff and Respondent in No. 19957.

SHOEMAKER, J.—This is an appeal by defendant Tool Research Co. from judgments rendered in favor of plaintiffs Space Properties, Inc., and Marshall Electric Company. Separate actions, brought by each of these plaintiffs, were consolidated for trial upon defendant's request.

The course of events resulting in the instant litigation began in the summer of 1958. Tool Research, headquartered in Southern California, was negotiating with Lockheed of Mountain View over a contract which Lockheed planned to give to a company having facilities in the immediate vicinity of its plant. In order to become eligible to bid on this contract, Tool Research needed a suitably equipped building within the required area by the first week in September, when the contract was to be awarded. In furtherance of this objective, Tool Research negotiated with Custom Company for the leasing of a building owned by it and adapting the structure to its needs. On August 6, 1958, Custom Company leased the premises to Tool Research for the period of one year with option to purchase. Among the terms, the lease provided for a monthly rental of $750 and required the lessee to keep the premises free and clear of all liens.

During the negotiations, Jacobsen of Custom Company, who handled the deal for it, indicated that North State Builders, another company of which he was an officer, would be willing to install at actual cost certain of the improvements desired by Tool Research. This arrangement was agreeable to Tool Research and North State Builders undertook to install certain partitions and carpeting in the leased premises. These improvements were ultimately completed in the latter part of September at a cost of $6,291.

In addition to the work performed by North State Builders, Tool Research also desired certain electrical facilities in the leased premises, and it employed Marshall Electric Company to install the necessary wiring and lighting. This portion of the improvements was completed by the middle of September at the total price of $3,076.78.

Tool Research failed to obtain the contract with Lockheed because its premises were not properly equipped in time to comply with Lockheed's deadline. Tool Research was billed by both North State Builders and Marshall Electric after their work was completed, but it refused to pay for the work performed by them. Thereafter, in November of 1958, Space Properties, Inc. agreed to buy the building from Custom Company and to take an assignment of its lease. Tool Research

consented to this transfer and the resulting substitution of landlords.

By December of 1958, North State Builders had still received no payment of its claim against Tool Research, and it therefore threatened to file a mechanic's lien on the leased premises. Space Properties, as equitable owner of the premises and as the assignee of the lessor's interest, demanded that Tool Research protect the property by paying the sum due. Upon Tool Research's failure to do so, Space Properties, on December 8, 1958, entered into an oral agreement with North State Builders whereby Space Properties promised to pay the entire $6,291 claim in exchange for North State Builders' promise to waive its mechanic's lien rights and assign its claim against Tool Research to Space Properties.

After entering into this agreement with North State Builders, Space Properties continued to request that Tool Research itself pay for the work performed by the contractors. Tool Research finally agreed that if Space Properties would pay both of the contractors' claims, Tool Research would reimburse it over a three-year period by entering into a new lease whereby the rental would be increased by $300 per month. Although Space Properties promptly prepared a new lease incorporating the terms agreed upon, Tool Research failed to execute it or to make any other arrangement for payment of the sums owed North State Builders and Marshall Electric.

On March 15, 1959, Tool Research vacated the leased premises and refused to pay any further rental. On May 22, Space Properties relet the premises to another party and on May 23, Space Properties sent Tool Research a notice of termination and demand for payment.

On July 8, 1959, Space Properties, in accordance with its prior agreement, paid North State Builders $6,291, receiving in return an assignment of North State Builders' claim against Tool Research.

Meanwhile, on July 3, 1959, Marshall Electric filed suit against Tool Research, alleging that it had performed certain services at the request of the defendant and that the agreed price and the reasonable value of these services was $3,076.78.[1]

On October 1, 1959, Space Properties also filed suit against Tool Research, seeking to recover the rent due for the months

---

[1] Although Marshall Electric originally sought to enforce a mechanic's lien on the premises and therefore named Space Properties as an additional defendant, this count was abandoned prior to trial because the lien had not been timely filed.

of March, April and May of 1959, and the sum of $6,291, which it had paid to North State Builders on behalf of the defendant.

Trial was had before the court sitting without a jury. Judgment was entered in favor of Space Properties for the rent from March 1959 through May 22, 1959, when the premises were relet to a third party; and for the $6,291 paid by Space Properties to North State Builders. Judgment was also entered in favor of Marshall Electric for the sum of $3,076.78.

Turning first to the appeal from the judgment in favor of Space Properties, it is appellant's contention that respondent was not entitled to recover the sum of $6,291 for the services rendered by North State Builders because the work was never completed in accordance with the contract specifications. Appellant particularly asserts that time was of the essence; that North State Builders knew that the work was to be finished by early September but failed to meet this deadline. Appellant further alleges that it had specifically informed North State Builders that the partitions were to be installed in such a manner as to be removable, but that the contractor proceeded to install load-bearing partitioning which was designed to be permanent and to inure to the benefit of the lessor.

The evidence was conflicting as to the time within which the work was to completed, appellant's witness assertting that North State Builders had agreed to complete the work by September 8, 1958, the witness of North State Builders averring that he recalled no specific deadline other than that the work was to be completed as diligently as possible. This conflict in the evidence presented a question that was resolved by the trial court in favor of respondent, and the finding of timely completion may not be disturbed.

The evidence that North State Builders had agreed to install removable partitioning and had failed to meet this requirement was similarly conflicting, and again the finding, based on such evidence, may not be disturbed.

Appellant next contends that respondent was not entitled to recover the $6,291 paid to North State Builders because there was no finding that actual payment of this claim was made prior to termination of appellant's lease, and because there was likewise no finding that respondent terminated the lease under a reservation of its lessor's rights. Appellant further asserts that the uncontradicted evidence established that the $6,291 could not have been paid to prevent

the filing of a mechanic's lien and was therefore a voluntary payment.

Appellant's argument is apparently based on the assumption that respondent's right to reimbursement of the $6,291 was a purely contractual one, arising solely out of appellant's covenant, as lessee, to keep the premises free from liens. Appellant reasons that a judgment based upon the breach of such a covenant may be sustained only if there was evidence showing that appellant's breach directly resulted in respondent's being compelled to pay the claim of North State Builders. Appellant further asserts that it is highly relevant whether respondent paid the claim while the lease was still in effect, since appellant's obligation to protect the premises from liens ended when respondent terminated the lease.

Such an argument is completely fallacious. Respondent's right to recover the $6,291 paid to North State Builders was in no sense dependent upon the landlord-tenant relationship existing between the parties. The evidence presented at the trial conclusively established that respondent did in fact pay North State Builders the full amount of its claim against appellant, and the actual written assignment was itself introduced into evidence. The trial court's findings were precisely in accord with this evidence. Under these circumstances, it is immaterial whether respondent was ever appellant's landlord or whether appellant's failure to pay North State Builders constituted a breach of the lease contract.

Appellant next asserts that the only evidence that North State Builders did in fact assign its claim to respondent was an "admittedly collusive document." Appellant bases this contention on the fact that the written memorandum of the assignment was executed some months after the parties had orally agreed to the assignment on December 8, 1958. We fail to see the motive for this alleged "collusion" unless it be deemed to lie in the parties' devious intent to prosecute this action in the name of the real party in interest. In any event, the record is devoid of any evidence of collusion on the part of respondent or North State Builders. Mr. Moonie, on behalf of respondent, testified that the parties had entered into a binding agreement in regard to the assignment on December 8, 1958, and that they had committed this assignment to writing at a later time, dating the document in accord with their best recollection as to when the oral agreement had been consummated.

Appellant's next contention is that respondent, by

terminating the lease and reletting the premises on May 22, 1959, released appellant from any obligation to pay the rent which had previously accrued. In support of this argument, appellant cites several cases holding that a lessor who terminates a lease without a reservation of rights may not continue to hold the lessee liable for rent which may thereafter accrue. These authorities do not apply here, in view of the fact that respondent recovered no rental which accrued after the date of determination. ▆▆▆ In *Guiras* v. *Harry H. Culver & Co.* (1930) 109 Cal.App. 743, 744 [293 P. 705], the court stated: "It has long been the settled law of this state, that while re-entry by the landlord and his resumption of the benefits, use and enjoyment of the premises terminates the lease, so far as the landlord's right to rentals subsequent to such entry is concerned, this does not affect the tenant's liability for rent accrued prior to such re-entry." (See also *Moskovitz* v. *LeFrancois* (1932) 121 Cal.App. 310, 314 [8 P.2d 1049]; 30 Cal.Jur.2d, Landlord and Tenant, § 268, pp. 409-410.)

▆▆▆ In the case at bar, respondent did not terminate the lease until May 22, 1959, at which time it reentered the premises for the purpose of reletting them to a third party. On May 23, it sent appellant a notice to pay up. There was clearly no evidence of any intent on respondent's part to release appellant from liability for the rent previously accrued, and, in accordance with the settled law, no such release was effected. The trial court was correct in awarding respondent the rent accrued prior to May 22, 1959.

▆▆▆ Appellant next asserts that the findings are contradictory and that it is impossible to tell whether the trial court based its award of $6,291 on the finding that respondent had paid the claim and taken an assignment thereof or on the finding that appellant had subsequently promised to repay respondent by executing a new three-year lease at a higher rental. This argument is wholly without merit. Although the trial court made a finding that appellant had agreed to execute such a new lease, it is apparent to us that the lower court did not intend to base its judgment on this finding. It must be first noted that an oral agreement to execute such a lease falls within the statute of frauds. (Civ. Code, §§ 1091, 1624, subd. 4; Code Civ. Proc., § 1971; *Kaye* v. *Melzer* (1948) 87 Cal.App.2d 299, 306 [197 P.2d 50].) Furthermore, the trial court made this finding only after it had disposed of all the major issues in the case and was attempting to sum-

marily resolve the subsidiary points raised by the pleadings and the evidence. In any event, this finding clearly creates no conflict whatever. The fact that appellant had agreed to enter into a new lease as a means of repaying the $6,291 owed respondent was in the nature of an admission by appellant that it recognized its liability for this sum. The finding thus lends additional (if unnecessary) support for the judgment in favor of respondent.[2]

█ Appellant's next contention is that the trial court erred in failing to allow it an offset or credit for the value of the improvements which remained on the premises and reverted to respondent. Appellant relies upon *Hicks* v. *Drew* (1897) 117 Cal. 305, 314-315 [49 P. 189], where the court approved the following instruction: " 'If the jury find from the evidence that the plaintiff has sustained any damage by the act of defendant, as she has complained against him, and that by the same act she has received benefit, then, in estimating such damage, such benefit should be deducted.' " In view of the trial court's findings, the rule is of no moment here. The evidence reveals that substantially all of the improvements installed at the request of appellant were left on the premises and retained by respondent. Mr. Moonie, on behalf of respondent, testified that the partition work and the electrical facilities had been retained in the building and were generally satisfactory. He also testified, however, that substantial additional improvements costing in excess of $25,000 had been installed by the new tenant and that this additional work had been adapted to the facilities left by appellant as a matter of convenience, but that in the absence of appellant's facilities, it might have been possible to install the new improvements at a lower overall cost. He also testified that respondent itself had been compelled to expend a sum in excess of $14,000 for improvements and a real estate commission in order to obtain a new tenant.

Since a defense in the nature of unjust enrichment or setoff is clearly an affirmative one, the burden was upon appellant to demonstrate that respondent had received actual monetary benefit from the improvements retained on the premises. Although appellant succeeded in showing that respondent had in fact utilized these facilities and found them satisfactory,

---

[2]Since the judgment was obviously not based solely on the oral agreement to execute a new lease, appellant's contentions that such an agreement violates the statute of frauds and supersedes the original lease become irrelevant.

there was no evidence whatever that respondent was thereby financially benefited.

Appellant's final attack upon the judgment is directed at several evidentiary rulings which purportedly constitute prejudicial error. We have reviewed the rulings and objections thereto and do not find any substantial basis for a claim of prejudice or detriment to the appellant's cause. We do not set forth the separate matters urged because of their triviality and the undue prolongation of this opinion to no real purpose.

Turning now to the appeal from the judgment in favor of Marshall Electric Company, appellant first contends that an action may be brought only by the real party in interest, and that the evidence conclusively establishes that respondent Marshall Electric had assigned its claim against appellant prior to trial. Appellant asserts that the Wells Fargo Bank, as respondent's assignee, was the only party entitled to bring suit upon the claim.

An examination of the record reveals that respondent did execute an assignment of its claim against appellant to the Wells Fargo Bank in November of 1958. The assignment was made in accordance with a method of accounts receivable financing, and the assignment of the claim was for a period of 90 days in return for 80 per cent of its value. The appellant did not pay the claim within the 90-day period, so respondent was compelled to repay the bank the entire amount which it had advanced. The record contains no evidence that the bank ever executed a formal reassignment of the claim.

Code of Civil Procedure, section 367, sets forth the requirement that every action must be prosecuted in the name of the real party in interest. This rule is designed to protect a defendant from a multiplicity of suits and from further annoyance and vexation, and to fix and determine the real liability which is alleged in the complaint. (*Kadota Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 796, 801 [167 P.2d 518].) However, so far as this case is concerned, we believe the rule set forth in *Graham* v. *Light* (1906) 4 Cal.App. 400 [88 P. 373], controls. In that case the plaintiff brought suit upon a promissory note secured by an assignment of stock. Evidence was introduced showing that the plaintiff, prior to commencing the action, had assigned the note to a bank as collateral security for a $500 loan, and that the note had not been reassigned until the day of trial. Judgment was subsequently entered in favor of plaintiff, and defendants appealed,

contending that the plaintiff had no cause of action when the suit was brought. The court held that the plaintiff, when he commenced the suit, was still the owner of the note and the holder of a substantial interest therein. He was thus entitled to maintain the action despite the assignment. The court then went on to state: "His action, however, could not have been maintained without making the bank, as a party interested, a party; nor in the absence of the bank—its interest still subsisting—would a court of equity have granted the plaintiff relief. But in such case relief would have been denied, 'not upon the ground that the facts (did not entitle him to it), but because all the parties interested in the subject matter (were) not before the court.' . . . [H]ad the note still been held by the bank under its assignment at the time of the trial, it would have been the duty of the court, under the provisions of section 389 of the Code of Civil Procedure, to have ordered the bank to be brought in. But in this case, as it appeared that the bank had reassigned the note to the plaintiff, this was unnecessary." (Pp. 402-403.)      In the instant case, it is true that appellant produced evidence that respondent, in order to secure accounts receivable financing, had assigned its claim to the Wells Fargo Bank prior to trial. Had the evidence also shown that the bank's interest was still subsisting, it would seem clear that the rule of the *Graham* case would have required respondent to obtain an order bringing the bank into the action. Otherwise, appellant might have been forced to defend against a separate action brought by the bank, despite the fact that it had paid respondent the full amount of the claim. The *Graham* case also held, however, that the third party assignee need not be brought in if there is evidence showing that, at the time of trial, its interest was no longer subsisting. Respondent would appear to have complied with this requirement by showing that the assignment had been made for a period of 90 days only and that the bank had been repaid the full sum which it had advanced to respondent. Under such circumstances, the bank could clearly have retained no interest in the claim, and appellant could not have been subjected to further harassment.

     Appellant contends, however, that the findings are fatally defective because they do not state that the bank's interest was terminated by reassignment or otherwise. Although it is true that findings must be made on all the material issues in a case, it is also the rule that failure to find on a particular issue is harmless where the evidence is such that

the finding would necessarily have been adverse to the appellant. (See 3 Witkin, California Procedure, Appeal, § 103, subd. g, p. 2277; *Bergman* v. *Bierman* (1956) 138 Cal.App.2d 692, 697 [292 P.2d 623].) In view of the uncontradicted testimony that the assignment to the bank was of a limited duration only and that the bank had been repaid in full the amount it had advanced upon the assignment, it cannot be doubted that a finding on this issue would have been unfavorable to appellant.

Appellant next urges that the evidence was insufficient to support the finding that respondent Marshall Electric performed its contract in accord with the requirements laid down by appellant. Again we have a finding based upon conflicting evidence, resolved by the trial court in favor of the respondent, which an appellate court accepts and does not disturb.

Appellant next contends that the evidence establishes that respondent abandoned its claim against appellant and looked to Space Properties for payment of the bill. Appellant asserts that this fact and the additional fact that respondent temporarily assigned its claim to the Wells Fargo Bank bring this case within the rule that "no one can take advantage of his own wrong," and thus require a reversal of the judgment. It is difficult to see any culpability whatever in respondent's actions. If appellant's argument can be interpreted as an attempt to urge that respondent waived its rights against appellant and released it from any obligation to pay for the work performed, the record is devoid of any evidence to that effect. The mere fact that respondent attempted to place a lien upon the premises and thus have his claim satisfied does not indicate to us any intent on respondent's part to release appellant from responsibility. Neither is any such intent manifested by the temporary assignment to the bank. Both acts merely indicate that respondent, as could be expected, was placed in a difficult position by appellant's prolonged refusal to pay for the services rendered. Any evidentiary support which might be deemed necessary was provided by Mr. Marshall's statement that respondent had never intended to release appellant from its contractual obligation.

Appellant next urges that the court erred in admitting testimony of compromise and settlement discussion between the parties. Suffice it to say the record shows that all testimony pertaining to settlement was excluded from evidence and disregarded by the court.

Appellant's final assignment of error is an attempt to incorporate by reference the evidentiary rulings complained of in the appeal from the judgment in favor of Space Properties, Inc. As above noted, none of these rulings constituted prejudicial error.

The judgment as to each cause is affirmed.

Kaufman, P. J., and Agee, J., concurred.