[L.A. No. 31259. Dec. 1, 1980.]

RICHARD WENDELL ARNESON, JR., Plaintiff and Appellant, v. DAVID H. FOX, as Real Estate Commissioner, etc., Defendant and Respondent.

COUNSEL

Seltzer Caplan Wilkins & McMahon, Jeffrey L. Mason and Dennis J. Wickham for Plaintiff and Appellant.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—What are the administrative consequences to a real estate licensee who is convicted of a felony following his plea of nolo contendere? We will conclude that a conviction following such a plea may serve as the basis for administrative discipline, so long as the underlying offense bears a substantial relationship to the qualifications, functions or duties of the licensed business or profession.

Appellant Richard Wendell Arneson, Jr., is licensed by the California Department of Real Estate as a real estate broker. Except for the single conviction under scrutiny here, he has no other criminal convictions or disciplinary record since he was first licensed in 1964. On November 3, 1975, appellant was convicted in federal district court, following a plea of nolo contendere, of conspiracy (18 U.S.C. § 371), a felony. On December 6, 1976, because of his conviction, respondent commissioner filed an accusation against appellant seeking to impose discipline upon him.

Administrative hearings were held, and respondent commissioner found that appellant's federal conviction is "a felony and a crime involving moral turpitude" (see Bus. & Prof. Code, § 10177, subd. (b)) which "is substantially related to the qualifications, functions, or duties" of a real estate licensee (see *id.*, § 490). (All further statutory references are to the Business and Professions Code, unless otherwise indicated.) Respondent also found "by way of mitigation, aggravation or explanation," the following facts regarding appellant's conviction:

"The conviction...stemmed from the filing of fraudulent reports of earnings with the United States Securities and Exchange Commission by U.S. Financial, a corporation engaged in real estate development, construction and financing. [Appellant] was not an officer or director of U. S. Financial and he did not play a major role in the business affairs of the corporation. He was, however, a willing instrument of the officers of the corporation who made its policies and directed its affairs. [¶] [Appellant] was placed on probation for three years and sentenced to serve six months in jail as a result of the conviction, but the term of confinement was subsequently reduced to four months. [¶] [Appellant] has been a real estate licensee since 1964. He has no record of prior disciplinary action or criminal conviction. He is presently a partner in a real estate investment and management firm in San Diego from which he derives his main source of income. He is married and is the sole support of his wife and two minor children."

On the basis of the foregoing findings, the commissioner ordered appellant's real estate license revoked, subject to appellant's right to apply for a restricted license pursuant to section 10156.5, and to seek reinstatement pursuant to Government Code section 11522. Thereafter, appellant brought a mandate proceeding in superior court (Code Civ. Proc., § 1094.5) to review the commissioner's decision. The court, following its review of the administrative record, rejected appellant's various contentions and denied mandate. This appeal followed.

1. *Relevant Statutory Provisions*

Under rule 11(e)(6) of the federal Rules of Criminal Procedure (18 U.S.C.A.), "evidence of...a plea of nolo contendere,...is not admissible in any *civil or criminal proceeding* against the person who made the plea...." (Italics added.) In parallel fashion, Penal Code section 1016, subdivision 3, referring to nolo contendere pleas, provides in pertinent part that "The legal effect of such a plea shall be the same as that of a

plea of guilty, but the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of and factual basis for the plea may not be used against the defendant as an admission *in any civil suit* based upon or growing out of the act upon which the criminal prosecution is based." (Italics added.)

Although appellant contends that federal rule 11(e)(6) would by its terms bar administrative consideration of a nolo contendere plea, or a conviction based upon that plea, he cites no supporting cases. The rule applies only to subsequent "civil or criminal proceedings," not to administrative hearings. In *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762 [129 Cal.Rptr. 462, 548 P.2d 1134], a similar administrative disciplinary proceeding, we recently construed similar wording of the foregoing section 1016, *supra*, as follows: "This provision makes a plea of nolo contendere equivalent to a guilty plea merely for the purpose of the criminal proceeding. Although it expressly forbids subsequent use of the plea as an admission of guilt in certain civil suits, *it does not purport to deal with the effect to be given in a collateral proceeding* to a conviction based on the plea and instead leaves such effect open to determination under applicable case law." (16 Cal.3d at p. 772, italics added.) Similarly, federal rule 11(e)(6) does not purport to deal with, or enjoin, the use of nolo convictions in collateral administrative proceedings, but impliedly leaves that matter to the laws of the respective states. In the absence of any controlling federal authority on the subject, sound policy suggests that we should construe the federal rule in a manner consistent with our prior interpretation of a similarly worded state law.

In California, prior to legislative clarification of the matter, much litigation arose concerning the propriety of using a nolo contendere plea and subsequent conviction as the basis for administrative discipline. (See *Cartwright* v. *Board of Chiropractic Examiners, supra*, 16 Cal.3d 762, 768-774.) With respect to real estate licensees, however, the issue has been resolved by section 10177, subdivision (b), which provides in pertinent part that "The commissioner may suspend or revoke the license of any real estate licensee,...who has....(b) Entered a plea of guilty *or nolo contendere* to, or been found guilty of, or been convicted of, a felony *or* a crime involving moral turpitude,..." (Italics added.) This section permits imposition of administrative discipline by reason of a nolo contendere plea to, or conviction of, any felony offense whether or not it involves moral turpitude. (See *Morris* v. *Board of Medical Examiners* (1964) 230 Cal.App.2d 704, 710 [41 Cal.Rptr. 351, 12 A.L.R.

3d 1201]; *Watkins v. Real Estate Commissioner* (1960) 182 Cal.App. 2d 397, 398-400 [6 Cal.Rtpr. 191].) Section 490 imposes one further requirement applicable to all business and professional licensing boards, namely, that "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued,..." (See *Pieri v. Fox* (1979) 96 Cal.App.3d 802, 805-809 [158 Cal.Rptr. 256]; *Brandt v. Fox* (1979) 90 Cal.App.3d 737, 748-749 [153 Cal.Rptr. 683].)

Bearing in mind the foregoing statutory guidelines, we turn to appellant's various contentions.

### 2. Propriety of Administrative Discipline Based Upon Conviction Following Nolo Contendere Plea

Appellant acknowledges that, pursuant to section 10177, subdivision (b), the Legislature has authorized the commissioner to impose discipline based upon convictions following nolo contendere pleas (hereafter referred to as nolo convictions). Yet appellant urges that principles of public policy and constitutional law combine to mandate us to construe the section in a manner which would require the agency to reexamine independently the facts which underlie a nolo conviction, thereby permitting the licensee to relitigate before the administrative body the issue of his guilt previously resolved in the criminal court. We disagree.

a. *Policy considerations.* Appellant emphasizes that there are many potential reasons why an accused might enter a nolo plea, such as a desire to avoid adverse publicity, the complexity or expense of defense, the unavailability of crucial evidence, or an aversion to the revelation of evidence prior to civil litigation, for tactical reasons. (See *Estate of McGowan* (1973) 35 Cal.App.3d 611, 618 [111 Cal.Rptr. 39]; Note, *Use of the Nolo Contendere Plea in Subsequent Contexts* (1971) 44 So.Cal. L.Rev. 737, 752-753.) Thus, as appellant contends, the nolo plea might have been induced by factors collateral to the issue of guilt. As we recently stated in *Cartwright v. Board of Chiropractic Examiners, supra*, 16 Cal.3d 762, 773, "when the conviction is based on a nolo contendere plea, its reliability as an indicator of actual guilt is substantially reduced, both because of the defendant's reservations about admitting guilt for all purposes and because the willingness of the dis-

trict attorney to agree to and the court to approve the plea tends to indicate weakness in the available proof of guilt." (Fns. omitted.)

Yet in *Cartwright* we did not purport to preclude administrative reliance upon nolo convictions where such reliance is statutorily authorized. In *Cartwright*, the applicable provision (an initiative measure) permitted suspension or revocation of a chiropractor's license for "conviction of a crime involving moral turpitude." No reference was made in the provision to nolo convictions. We first observed that the California courts had adopted the minority view that the use of nolo convictions as the basis for administrative penalty was improper. (16 Cal.3d at pp. 770-771; see *In re Hallinan* (1954) 43 Cal.2d 243, 247 [272 P.2d 768]; *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal.App.3d 209, 219-220 [83 Cal.Rptr. 89].) We next noted, however, that the Legislature had "selectively amended" several statutes to allow consideration of nolo convictions as a ground for administrative discipline. (16 Cal.3d at pp. 771-772.) We concluded that, *in the absence of such express legislative authority*, a nolo conviction is an unreliable indicator of guilt and should not be considered in imposing discipline. (*Id.*, at pp. 772-774.) Significantly, in the concluding sentence in *Cartwright*, we stressed that "Any inclusion of such [nolo] convictions as a basis for discipline... should be based...*on a legislative determination* that such pleas and convictions are sufficiently reliable indicators of guilt to warrant disciplinary measures for the protection of the public." (*Id.*, at p. 774, italics added; see also, *Birnbaum* v. *Lackner* (1978) 82 Cal.App.3d 284, 287 [147 Cal.Rptr. 93].)

*Cartwright* thus represents our recognition that the Legislature might reasonably determine "that doctors, lawyers and other professional persons not escape administrative sanctions through use of the *nolo contendere* plea...." (44 Ops.Cal.Atty.Gen. (1964) 163, 165.)

■ The Legislature having made the specific determination in section 10177, subdivision (b), contemplated in *Cartwright*, by expressly authorizing the commissioner to suspend or revoke a real estate license following entry of a nolo plea or conviction of a felony or a crime involving moral turpitude, it follows that considerations of general policy expressed in *Cartwright* would not bar reliance upon appellant's conviction in this case. (Accord, see Note, *The Nolo Contendere Plea: Uncertainty Surrounding its Collateral Effects in California* (1975) 3 Western St.U. L.Rev. 92, 105; Note, *Nolo Contendere—Its Use and Effect* (1964) 52 Cal.L.Rev. 408, 418, 422.)

b. *Constitutional considerations.* ■ Appellant next contends that section 10177, subdivision (b), is unconstitutional as a violation of due process principles. In appellant's view, due process requires that licensees suffering nolo convictions be afforded the opportunity to relitigate the issue of their guilt, given the asserted unreliability of the nolo conviction as an indicator of guilt. We have already observed, however, that section 10177, subdivision (b), represents "a legislative determination that such [nolo] pleas and convictions are sufficiently reliable indicators of guilt...." (*Cartwright, supra,* at p. 774.) Thus, appellant's premise of unreliability cannot stand. The Legislature reasonably might have concluded that a nolo conviction represents a sufficiently strong indicator of guilt to warrant discipline of a licensee without necessitating any administrative relitigation of the underlying charges. Indeed, in many cases such as that herein presented, the evidence necessary to reestablish the criminal charges may be wholly unavailable to the administrative officials. Accordingly, a strong majority of the courts in this and other states have considered nolo convictions as conclusive evidence of guilt for the purpose of imposing administrative discipline. (Annot., 89 A.L.R.2d 540, 606.) No cases have been cited to us which have reached a different conclusion on constitutional grounds.

It is true, as appellant observes, that "a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession." (*Newland v. Board of Governors* (1977) 19 Cal.3d 705, 711, fn. omitted [139 Cal. Rptr. 620, 566 P.2d 254]; see *Cartwright, supra,* at p. 767.) Yet, as previously noted, that requirement is fully satisfied statutorily by section 490, which requires a showing that the offense bears a substantial relationship "to the qualifications, functions, or duties" of any licensed business or profession.

In *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 663 [97 Cal. Rptr. 320, 488 P.2d 648], we expressed much the same principle, commenting that "an ordinance regulating the right to engage in a lawful occupation or business must bear a rational relationship to a valid governmental purpose. [Citations.] Accordingly, standards for excluding persons from engaging in such commercial activities must bear some reasonable relation to their qualifications to engage in those activities."

So long as there exists the requisite substantial relationship mandated by section 490, due process principles are satisfied. We conclude that

section 10177, subdivision (b), read in conjunction with section 490, meets due process requirements and we perceive no additional constitutional mandate which would compel the board to relitigate the issue of guilt. (For recent cases applying the substantial relationship requirement and involving real estate licenses, see *Gold* v. *Fox* (1979) 98 Cal.App.3d 167 [159 Cal.Rptr. 864] [license properly revoked following licensee's guilty plea and conviction of possessing marijuana for sale]; *Pieri* v. *Fox, supra,* 96 Cal.App.3d 802 [license improperly denied following conviction of making false statement to obtain unemployment benefits]; *Brandt* v. *Fox, supra,* 90 Cal.App.3d 737 [license improperly denied following conviction of distribution of cocaine].)

The licensee, of course, should be permitted to introduce evidence of extenuating circumstances by way of mitigation or explanation, as well as any evidence of rehabilitation. (See *Brandt, supra,* at p. 747; § 482.) Yet, as recently expressed, an inquiry into the circumstances surrounding the offense "should not form the basis of impeaching a prior conviction." (*Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 302 [144 Cal.Rptr. 826].) In the present case, petitioner was given the opportunity of reviewing the circumstances of his offense as well as his efforts toward rehabilitation. No relevant mitigating evidence was refused consideration, although appellant properly was not permitted to impeach his conviction by explaining the "true" reasons for his nolo contendere plea. Regardless of the various motives which may have impelled the plea, the conviction which was based thereon stands as conclusive evidence of appellant's guilt of the offense charged. To hold otherwise would impose upon administrative boards extensive, time-consuming hearings aimed at relitigating criminal charges which had culminated in final judgments of conviction.

Appellant makes the additional argument, however, that section 10177, subdivision (b), improperly vests uncontrolled discretion in the commissioner. The commissioner's discretion, however, is tempered by the requirement of section 490, and circumscribed by the availability of judicial review which also protects against the arbitrary or capricious exercise of the commissioner's discretion. (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242].) As a final safe-guard, the Legislature has recently required administrative boards to develop written "criteria" to assist in determining whether the requisite special relationship exists to permit discipline. (See §§ 481, 482.) Such criteria were adopted in 1978 (see Cal. Admin. Code, tit. 10, §§ 2910-2912), subsequent to the administrative hearings in this case.

Although these criteria were not available to appellant at the time of his hearings, he fails to suggest how he may have been prejudiced thereby. Nothing contained in these criteria would afford a basis for excusing or mitigating his conduct, or reducing his punishment. Indeed, the criteria specifically provide that discipline is appropriate where the offense involves fraud or deceit, or constitutes a conspiracy to commit such acts. Appellant's offense likewise involved such misconduct.

We detect no violation of appellant's constitutional rights in his disciplinary proceedings.

### 3. *Existence of Substantial Relationship*

We turn next to appellant's further contention that his nolo conviction was insufficient to furnish the requisite reasonable or substantial relationship to the qualifications, functions or duties of his profession.

Appellant was convicted of conspiracy, a federal offense. (18 U.S.C. § 371.) The judgment recites that the conspiracy conviction was "as charged in Count 1 in the Indictment in 66 Counts...." The indictment was introduced as an exhibit at the administrative hearing and by reason of appellant's nolo plea, all facts alleged therein stand admitted. (*Lott* v. *United States* (1961) 367 U.S. 421, 426 [6 L.Ed.2d 940, 943-944, 81 S.Ct. 1563]; *United States* v. *Heller* (6th Cir. 1978) 579 F.2d 990, 998.) Therefore, the indictment may be considered by us in evaluating the nature of the offense for which appellant stands convicted. (*Matanky* v. *Board of Medical Examiners, supra,* 79 Cal.App. 3d 293, 302; *Tseung Chu* v. *Cornell* (9th Cir. 1957) 247 F.2d 929, 935-936.) The indictment accused appellant and others of "willfully and knowingly" conspiring to commit various specified offenses in violation of a variety of federal statutes (15 U.S.C. §§ 77q, 77x, 78m, 78o(d), 78ff(a); 17 C.F.R. §§ 240.13a-1, 240.15d-1, 249.310; 18 U.S.C. §§ 215, 1014, 1341, 1343, 2314) by assisting in the creation of a false and inflated financial picture of U.S. Financial, a corporation engaged in real estate development.

Specifically, the indictment charges that appellant aided and abetted the fraud by his active and knowing participation in land sales to strawmen or shell corporations, for the purpose of generating the false impression that U.S. Financial was realizing large profits from

these sales. Although appellant was neither an employee nor officer of U.S. Financial, it was alleged that he agreed to become an owner or operator of various shell corporations which supposedly purchased property from U.S. Financial in arm's length transactions, using funds provided by U.S. Financial or its officers for payment of the purchase price. An important aim of the conspiracy was to promote the sale of U.S. Financial stock at substantially higher prices which were reflective of the apparently successful and profitable land sales.

It is apparent from a reading of the indictment that the charges against appellant bore a reasonable and substantial relationship to the qualifications, functions or duties of his profession as real estate broker. These charges included wilful participation in dummy land sales transactions which were entered into for illegal and fraudulent purposes. Similar offenses involving dishonest or fraudulent conduct frequently have been held to constitute grounds for administrative discipline. (*In re Hallinan* (1957) 48 Cal.2d 52, 55-56 [307 P.2d 1]; *Gold* v. *Fox, supra*, 98 Cal.App.3d 167, 176-177 [real estate broker]; *Matanky* v. *Board of Medical Examiners, supra*, 79 Cal.App.3d 293, 305-306; *Ring* v. *Smith* (1970) 5 Cal.App.3d 197, 205 [85 Cal.Rptr. 227] [real estate broker]; *Rhoades* v. *Savage* (1963) 219 Cal.App.2d 294, 299-300 [32 Cal.Rptr. 885] [real estate broker].) *Ring* involved a real estate broker who suffered a nolo conviction for conduct which included misrepresentations in the sale of securities. The *Ring* court said "One of the purposes of the governing legislation [§ 10177, subd. (b)] is to insure, as far as possible, that real estate brokers and salesmen will be honest, truthful and of good reputation. [Citation.] By making the above representations appellants manifestly demonstrated a lack of integrity." (P. 205.)

At the administrative hearing, appellant and his counsel were permitted to testify regarding the circumstances which surrounded appellant's offense. Appellant acknowledged that the transactions conducted by the officers of U.S. Financial constituted security fraud, because these transactions were made for the purpose of misrepresenting the company's profits which then were reflected in its financial statements. Appellant, however, argued that the record lacked any evidence of his own improper intent. As characterized by his counsel "It would come down to a question as to whether [appellant] realized that he was helping in something that was illegal." Notwithstanding his conviction, he attempted to introduce evidence which would raise doubt as to his guilt of the federal offense. As we have previously noted, this he may not do.

Appellant continues to assert that administrative discipline would be improper in the absence of any positive proof of his wrongful intent beyond the indictment and nolo conviction themselves. Yet as we have seen, the nolo conviction stands as conclusive proof of appellant's guilt of the specific offense charged in the indictment. No extrinsic independent evidence thereof need be introduced. Nor is appellant permitted to impeach that conviction. (*Matanky, supra*, at p. 302.) We conclude that the record amply supports the commissioner's finding that appellant's offense bore a substantial relationship to the qualifications, functions or duties of his profession.

### 4. *Adequacy of Findings*

■ Appellant next complains that the trial court, following its review of the administrative record, failed to enter adequate findings in support of its judgment denying mandate. However, the court expressly incorporated by reference certain additional findings of the commissioner and concluded that they were supported by the weight of the evidence. The incorporated findings stated, among other things, that appellant is a licensed real estate broker; that he was convicted of conspiracy following his nolo contendere plea; that the offense is a felony and a crime which not only involved moral turpitude but was substantially related to appellant's qualifications, duties and functions; and that appellant was a "willing instrument" of U.S. Financial's officers in helping them create a false impression of the company's earnings. As we have seen, these findings were fully supported by the indictment and judgment of conviction.

Although appellant suggests that the trial court should have entered its own findings rather than incorporate those of the commissioner, the objection is overly technical and unsupported by any authority. No reason appears why a trial court in making its findings cannot incorporate by reference, as its own, the findings made by an administrative board, if the intent to incorporate is clearly expressed.

Similarly unavailing is appellant's reliance upon rule 232(e) of the California Rules of Court. This rule prohibits findings which "refer merely to the truth or falsity of *allegations* contained in the pleadings." (Italics added.) The reason for the rule is clear. A trier of fact's adoption of the *pleadings* of one of the litigants may leave considerable doubt as to the exact basis of the trier's findings. Thus, pleadings are often cast in much more general, and sometimes even conflicting, terms

than will be appropriate for the court's ultimate findings. No such doubts are presented here. In any event, any error in failing to enter more specific findings would be necessarily harmless, because the evidence in this case would have required similarly adverse findings as a matter of law. (See, e.g., *Space Properties, Inc.* v. *Tool Research Co.* (1962) 203 Cal.App.2d 819, 829-830 [22 Cal.Rptr. 166]; 6 Witkin, Cal. Procedure (1971) Appeal, § 307, at p. 4289 and cases therein cited.)

The judgment is affirmed.

Tobriner, J., Mosk, J., Clark, J., and Manuel, J., concurred.

**BIRD, C. J.**—I respectfully dissent. Since Justice Howard Wiener of the Court of Appeal set forth a thoughtful analysis with which I agree, I herewith publish his opinion in pertinent part:

The right to practice a profession is a fundamental right protected by the due process clause of the state and federal Constitutions. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 273, p. 3563; *Brecheen* v. *Riley* (1921) 187 Cal. 121, 124-125 [200 P. 1042].) A person may be barred from practicing a lawful profession only for reasons relating to his fitness or competence to practice that profession. (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal. Rptr. 620, 566 P.2d 254].) The power of a state to deny or revoke a vocational license cannot be applied arbitrarily. The exercise of the power must bear a direct and rational relationship to the individual's fitness to engage in the particular vocation involved. (See, e.g., *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447 [55 Cal.Rptr. 228, 421 P.2d 76]; *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]; and *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648].)

Since 1943 when [Business and Professions Code] section 10177, subdivision (b), was first enacted and pursuant to all subsequent amendments, the Real Estate Commissioner has had the power to commence disciplinary proceedings involving any real estate licensee who had been convicted of a felony. (Stats. 1943, ch. 127, § 1, p. 842.) Evidence of a conviction based on a guilty plea is admissible to establish the fact that the licensee had committed the crime to which he had entered his plea pursuant to his implicit admission of every element contained in the of-

fense charged.[5] (See Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1979) § 5.31, pp. 40-41.) It was not until 1953 in response to *Caminetti* v. *Imperial Mut. L. Ins. Co.* (1943) 59 Cal.App.2d 476 [39 P.2d 681], that the Legislature amended section 10177, subdivision (b), to include a conviction following a plea of nolo contendere to a felony or to a crime involving moral turpitude as a basis for discipline.

In *Caminetti*, the officers of an insurance company entered a nolo contendere plea and were convicted in federal court of a charge of defrauding the United States. In proceedings under the Insurance Code, the Commissioner attempted to introduce the federal conviction as conclusive evidence of fraud justifying the seizure of the company's assets. The court ruled the conviction inadmissible since it was based on the nolo contendere plea.[6] The nolo contendere plea was held to be an arrangement between the defendant and the court to expedite the criminal proceedings; thus the conviction obtained on the plea "... by reason of the agreement underlying it, must in all good conscience, fairness and equity be held to be a conviction for the limited and agreed purposes of that proceeding... and for no other purpose." (*Caminetti, supra,* at p. 492.) The *Caminetti* court refused to distinguish between the plea of nolo and the conviction based on the plea. A similar result followed in a State Bar proceeding in *In re Hallinan, supra,* 43 Cal.2d 243, 247, which prompted the Legislature to make wholesale amendments to the Business and Professions Code involving the legal profession, dentists, pharmacists, accountants, nurses, veterinarians and physical therapists. (See *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal.App.3d 209, 220 [83 Cal.Rptr. 89]; *Cartwright* v. *Board of Chiropractic Examiners* [1976] 16 Cal.3d 762, 769-774 [129 Cal.Rptr. 462, 548 P.2d 1134].)

---

[5]The guilty plea is admissible in a subsequent civil proceeding on the independent ground that it is an admission against interest (Evid. Code, § 1220). It does not, however, for the purposes of the later civil action, conclusively prove the commission of the acts alleged in the underlying information or indictment. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439].) The weight and significance given the plea in determining whether or not to suspend or revoke a professional license is for the hearing officer (and, in an independent judgment case under Code Civ. Proc., § 1094.5, the trial court) to decide. (*Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 191 [71 Cal.Rptr. 357].) Certainly, in a subsequent civil proceeding, under either the majority or minority view of the use of the conviction following a nolo plea..., the same right to litigate the issues underlying a conviction had without trial should inure to the nolo pleader as it does to one who has pleaded guilty.

[6]A plea of nolo contendere in the state courts was not permitted until the enactment in 1963 of Penal Code section 1016, subdivision 3. (Stats. 1963, ch. 2128, § 1, p. 4418.)

At first blush it thus appears the Legislature attempted to equate a plea of nolo contendere to a felony under section 10177, subdivision (b), with either a guilty plea or a finding of guilty after trial. To treat them as identical, however, ignores not only the policy underlying the purpose for the enactment of the nolo plea, but also Evidence Code section 1300, which provides that evidence of a final judgment adjudging a person guilty of a felony is admissible when relevant in a civil action unless the judgment was based on a plea of nolo contendere. It is generally recognized that Penal Code section 1016, subdivision 3, was enacted in response to *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601. (See, e.g., Comment, *Nolo Contendere—Its Use and Effect* [1964] 52 Cal.L.Rev. 408, 409; Comment, *The Nolo Contendere Plea: Uncertainty Surrounding Its Collateral Effects in California* (1975) 3 Western St.U.L.Rev. 92, 93.) There the court held a civil litigant is collaterally estopped from relitigating an issue previously found against him after a criminal trial. Any issue necessarily decided in the criminal prosecution is conclusively determined as to the parties if the issue is involved in a subsequent civil action.

In dictum, the *Teitelbaum* court also discussed the inapplicability of the doctrine of collateral estoppel where the conviction is based on a guilty plea. It pointed out that although in a subsequent civil trial the plea of guilty is admissible as an admission against interest, it cannot be treated as conclusive of the issues involved for there has not previously been a full presentation of the case. "Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citations] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." ([*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601,] 605-606.) Thus before the nolo plea was allowed in state courts a criminal defendant faced with related civil proceedings had an unhappy choice. He could go through the expensive process of a criminal trial and if convicted, the conviction would conclusively and adversely determine the issues involved in the civil matter. Of course, if acquitted, because of the difference in the burdens of proof in a civil and criminal case, the acquittal would be of no evidentiary benefit to him. He could also plead guilty recognizing the impact his admission would have on the trier of fact in the civil case. To avoid this perhaps justifiable Catch-22 facing defendants in criminal cases, the Legislature enacted Penal Code section 1016, subdivision 3, which would avoid the perceived disastrous civil consequences to a defendant consistent with the goals of the penal

system, concurrently expediting the administration of criminal justice. Basically, the civil consequences of criminal acts would be deferred to the civil forum to allow each party his day in court. The distinction between the nolo and guilty pleas was reinforced two years later when Evidence Code section 1300 was enacted (Stats. 1965, ch. 299, § 2 [, p. 1345].)[7]

The distinction drawn in *Teitelbaum* between the collateral effect of a conviction after trial and a conviction following a guilty plea is equally applicable in the administrative context. Similarly, the distinction between a nolo and guilty plea must be recognized to satisfy the legislative intent reflected in section 10177, subdivision (b), Penal Code section 1016, subdivision 3, and Evidence Code section 1300.

The number of possible factual situations facing an administrative law judge in disciplinary proceedings involving real estate licensees or others, although not infinite, borders on the immeasurable. The Legislature, aware of the administrative burden of regulatory agencies to effectively discipline errant licensees and the nexus between a conviction based on a nolo plea and the commission of the underlying act(s), authorized the regulatory agency to impose discipline based on a conviction following a nolo plea. Within this continuum of possible cases, there may be those in which the licensee may fail to appear at the hearing or after appearing will devote his energies to evidence relating to his rehabilitation in mitigation of discipline. Other cases may include the unusual situation such as the one presented here where the licensee vigorously asserts his innocence and attempts to explain away his plea of nolo. Because of the unique characteristics of the nolo plea, we conclude that only by treating section 10177, subdivision (b), as creating a rebuttable presumption designed to implement the public policy of expediting the functions of those charged with regulating vocational or professional licensees can the plea be used in disciplinary proceedings. The competing interests are thus reconciled within constitutional limitations— proper deference is given to the legislatively determined reliability of a nolo plea as an indication of guilt, the legislatively created and judicially recognized distinction between the nolo pleas is preserved, and the licensee is not denied due process of law.

---

[7]Although these policy considerations could arguably be deemed irrelevant to the instant case on the grounds that a disciplinary proceeding is not a civil action, this distinction is too tenuous as the basis for a meaningful rationale.

In an administrative hearing, a guilty plea is admissible evidence to be weighed along with and against all other evidence presented at the hearing to determine whether the licensee has by his actions shown himself to be unfit to continue practicing in the real estate profession. If the hearing officer finds by a preponderance of the evidence, including evidence of the guilty plea, that suspension or revocation of the license is warranted, he may recommend such action to the Commissioner and the Commissioner may so act, subject to judicial review for abuse of discretion. However, if the proceeding has been triggered by a conviction following a nolo plea, the certified records of the indictment or information, the nolo plea, and the conviction based upon the nolo plea may be introduced as prima facie evidence that the licensee committed the acts described in the documents (Evid. Code, § 602), thereby transferring to the licensee the burden of establishing the nonexistence of the presumed facts (Evid. Code, § 606). This presumption is not evidence (Evid. Code, § 600, subd. (a)), and if the licensee presents evidence at the hearing sufficient to rebut it, the facts of the conviction may no longer be considered in determining the truth or falsity of the allegations.

In further balancing of the interests involved, we conclude the burden placed on the licensee under such circumstances should be proof, by a preponderance of the evidence, of the nonexistence of the presumed facts.

When we test this approach on a practical basis not only in the present case but in hypothetical cases within the continuum described, we conclude the presumption created does not place an undue burden on the agency or the individual involved. It merely assures the licensee and the public that the hearing officer in the first instance and the court thereafter will have sufficiently reliable information to properly exercise discretion in the weighing process necessary to reach a fair decision.

*The Hearing Officer's Failure to Exercise His*
*Discretion in Weighing the Evidence Requires*
*Reversal for Future Administrative Hearing*

Plaintiff's petition for writ of mandate required the trial court to exercise its independent judgment on the evidence. (Code Civ. Proc.,

§ 1094.5, subds. (b), (c).) The court adopted the Commissioner's findings of fact and conclusions of law.[8] These findings were that (1) Arneson was a real estate broker, (2) he was convicted of conspiracy in the federal court on his plea of nolo contendere, and (3) conspiracy was a felony and a crime involving moral turpitude, and the crime was substantially related to the qualifications, duties, and functions of a real estate licensee within the meaning of section 490. The findings also stated by way of "mitigation, aggravation or explanation" Arneson was a "willing instrument of the officers of the corporation [U.S. Financial] who made its policies and directed its affairs."

The administrative hearing was brief. The Commissioner, subject to examining Arneson, rested his case after he introduced the indictment, Arneson's nolo plea, and the conviction. Counsel for Arneson made an opening statement to satisfy the dual purpose of furnishing the hearing officer an overview of the facts plus introducing evidence in narrative form of Arneson's limited involvement in U.S. Financial's affairs. Arneson's direct testimony confirmed and buttressed his counsel's explanation and furnished additional information relating to his proper handling and accounting for millions of dollars of real property and cash.

The confusion as to the evidentiary significance of the conviction based on the nolo plea is apparent from the record. At different times, the hearing officer said: "The conviction points in one direction. It points towards guilty. You have painted a picture here that points in the exact opposite direction," and "Based on what you tell me, no aiding or abetting took place, at least none of a criminal nature," and "[Y]ou haven't said anything that would indicate that the respondent was implicated in any of these transactions, and if he was not, why was a plea of nolo contendere entered?"

When Arneson tried to respond to these inquiries by introducing a written explanation as to why he had pleaded nolo, the evidence was re-

---

[8]Although we do not address whether the findings in this case were in violation of California Rules of Court, rule 232(e) precluding findings which merely refer to the truth or falsity of allegations contained in the pleadings (see *Martin* v. *Baker* (1974) 43 Cal.App.3d 1049 [118 Cal.Rptr. 238]), our preference would be for the court to make its own findings to assure its independent judgment on the weight of the evidence and to guarantee that our attention will be properly focused. (Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1979) Procedure and Practice, § 15.26, p. 151.)

jected as irrelevant. During cross-examination when counsel for the Commissioner was trying to probe into the underlying facts set out in the indictment to deal with Arneson's theory of defense, the hearing officer declined to recess to permit Arneson to review the indictment, stating: "I think we have spent more time than we should on this case. It's now ten after three. We've been going since 1:30. I don't know how much further we're going to go, and I would like to wind it up as soon as possible." When reminded that the time estimate was two to three hours, the hearing officer said: "Listening to the evidence here at this time, it seems to me it's a substantial overestimate." On another occasion when asked to recess so he might look at the indictment, he commented: "No, counsel, I'm not going to do that at this time. We have spent two hours, and I'm not going to sit down and go through the indictment. I'm going to confine your questions to the area that is relevant at this point."

The comments made by the hearing officer, his rejection of the explanation underlying Arneson's nolo plea, and his statement that a two-hour hearing was an excessive time estimate to resolve the factual questions presented in the indictment all point to the hearing officer's determination that nothing further was required as a basis for imposition of discipline other than the nolo plea and the conviction based on the plea. The Attorney General in this appeal makes the same argument. The finding that Arneson was a willing instrument of the officers of U.S. Financial was drawn only by inference from the conviction and was treated as a conclusive presumption, for no other evidence was presented on this question.

We conclude in the exercise of discretion, not only must the hearing officer decide the weight to be given to a conviction (*Arenstein v. California State Bd. of Pharmacy, supra*, 265 Cal.App.2d 179, 190), but where the conviction is based on a plea of nolo contendere, he must decide whether the underlying acts constituting the crime were actually committed. In those cases where a licensee asserts his innocence after a prima facie case against him has been made, he is entitled to a full hearing to guarantee him the panoply of legal protection to which he is entitled in protecting his right to practice his profession. (*Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553].) "Due process" are more than buzz words. To be meaningful they must be energized from the theoretical to the practical through well-prepared lawyers and patient triers of fact. Where, as

here, the Commissioner failed to exercise his discretion in the manner required by law, Arneson is entitled to a new hearing.

Newman, J., concurred.